UNITED STATES of America, Plaintiff–Appellee, Cross Appellant,

v.

**William LI, Defendant–Appellant,**

and

**Danny Hogan, Defendant–Cross Appellee.**

Nos. 94–2630, 94–2677.

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1995.

Decided May 25, 1995.

Barry Rand Elden, Asst. U.S. Atty., Rocco J. DeGrasse (argued), Office of the United States Attorney, Crim. Receiving, Appellate

Div., James B. Burns, Office of the United States Attorney, Chicago, IL, for U.S.

Marc W. Martin (argued), Genson, Steinback, Gillespie & Martin, Thomas M. Breen, Martin, Breen & Merrick, Chicago, IL, for William W. Li.

Carol A. Brook, Camille B. Conway (argued), Office of the Federal Defender Program, Chicago, IL, for Danny C. Hogan.

Before CUMMINGS, FLAUM, Circuit Judges, and WALTER, District Judge.[1]

WALTER, District Judge.

Defendants Li and Hogan were convicted in a kickback scheme between a Chicago union (General Services Employees Union Local 73) and a health care provider. Hogan was a business agent for the union who acted as liaison between the union's trust fund,[2] which paid for health benefits, and health care providers. Li was a dentist who owned a company, Health Administrators, Inc. (HA), which secured commitments from Chicago area dentists to provide dental care at reduced rates. Hogan was not the union's decision maker as to which health care companies actually received the union contracts. It is not apparent that Li knew this.

During the time at issue, Richard Wesley and Harry Kurshenbaum served as the union's representatives on the Board of the Trust Fund; participating employers also had representatives. In his discussions with the Board regarding prospective health care providers, Hogan recommended only one dental care provider: HA. Not surprisingly, HA won the contract, which proved extremely lucrative and HA grew many-fold. After HA won the contract, Hogan told Li that Hogan's wife, Mary Beth Schlesinger, owned a graphics design business named Morley Graphics. Hogan suggested Li hire her. Schlesinger met with Li once and her firm did virtually no work for this meeting. Thereafter, Morley Graphics received monthly checks from HA for roughly 10% of whatever HA earned from the union that month. Schlesinger testified that Hogan ran the checks through her corporate account to avoid any "conflict of interest" questions from the union regarding his "commissions." She received over $36,000 from HA in the fifteen months between September 1987 and December 1988.

Li was convicted of both a conspiracy and a substantive count under 18 U.S.C. § 1954. He appeals. A jury convicted Hogan of both counts plus a money laundering count under 18 U.S.C. § 1956. Upon motion, the District Court granted a judgment of acquittal on the money laundering count. The government appeals the district court's judgment of acquittal.

## DISCUSSION

The first argument raised on appeal relates to incriminating statements Li made to his former partner Clayton Hayes, who testified for the government. Li and Hayes were partners in another dental care provider similar to HA named Illinois Pacific Dental. Hayes had provided the federal government information in three or four other investigations prior to the Li/HA affair. When Hayes heard that Li might be indicted, he arranged a meeting with Li to discuss the situation. He also called Hahne, an agent he knew in the Labor Department, to find out if Li had been indicted. Hahne confirmed that Li had been indicted; that Hayes would meet with Li and that they would discuss the indictment.

At the meeting, Li made certain admissions to Hayes. After the meeting, Hahne arranged a meeting between Hayes and the

1. The Honorable Donald E. Walter of the United States District Court for the Western District of Louisiana, is sitting by designation.

2. Local 73 is a branch of the International Service Employee's Union, with 22,000 local members at the time of trial. Local 73 represented its members in negotiations with various employers. Local 73 assigned business agents to represent the employees of a particular business. Amongst other duties, business agents negotiated health care coverage. The Employee Retirement Income Security Act of 1974 ("ERISA") required the union to maintain a trust fund separate and apart from labor union accounts for uses such as providing health care coverage.

Assistant U.S. Attorney prosecuting this case. Hayes testified for the government at the grand jury and at trial. Li sought to suppress these admissions at trial on the grounds that the government effectively used Hayes as a quasi informant, post indictment, to gather damaging testimony in the absence of Li's named counsel. The district court denied Li's motion to suppress. On appeal, Li argues this denial violated the Sixth Amendment.

■■■ *Massiah v. United States* established that the Sixth Amendment prohibits the government from deliberately eliciting incriminating statements from a defendant, in the absence of counsel, after the defendant has been indicted. 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). To find a Sixth Amendment violation, the statements in question must have been (1) deliberately elicited (2) by a government agent. *United States v. York*, 933 F.2d 1343, 1355 (7th Cir.1991). This court reviews the district court's factual finding that Hayes was not a government agent for clear error. *United States v. Malik*, 680 F.2d 1162, 1165 (7th Cir.1982). We may, however, draw our own legal conclusions from the lower court's factual findings. *United States v. York*, 933 F.2d at 1358.

In this case, there is no question that Hayes deliberately elicited the information from Li. Hayes testified that he arranged a meeting with Li in order to protect his investment in Pacific Union Dental, his partnership with Dr. Li. In other words, Hayes deliberately elicited the information from Li in order to be fully informed about any potentially harmful effect on their joint venture.

■■■ Here we focus on the second prong; whether Hayes was a government agent. We have previously refused to extend this concept to "an individual, acting on his own initiative, [who] deliberately elicits incriminating information." *United States v. Malik*, 680 F.2d 1162, 1165 (7th Cir.1982). Traditional principles of agency help determine government agent status. *United States v. York*, 933 F.2d 1343, 1357 (7th Cir.1991). Control is an essential element of these principles; there must be an understanding between the parties that the principal is· in

control while the agent serves subject to that control. *Id.*, (quoting *Federal Pants, Inc. v. Stocking*, 762 F.2d 561, 564 (7th Cir.1985)). Hayes was a business owner acting on his own initiative. Though he contacted the government, it was in an attempt to receive information rather than relay it. The evidence demonstrated no government control over Hayes' actions; most importantly, there was no control over Hayes' decision to arrange a meeting with Li. Hayes was not a government agent, thus there was no violation of the Sixth Amendment.

Li relies heavily upon *Maine v. Moulton*, 474 U.S. 159, 171, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985), to argue that the government had an affirmative obligation to preserve his right to counsel. *Moulton*, however, did not abandon the second prong necessary for a *Massiah* violation, i.e. government agent status. In fact, the informant in *Moulton*, at the request of the police, wore a concealed wire transmitter to record conversations with the accused. Clearly, this undercover informant satisfied the elements discussed above for classification as government agent. Li's affirmative obligation argument does not, in this case, satisfy his burden of meeting the second prong of the test.

The next argument raised on appeal alleges error in the district court's order compelling appellant Li to produce handwriting exemplars. Josie Perez, an HA employee, testified before the grand jury but originally failed to produce the sixteen HA checks subpoenaed as the kickback checks. One week later and the same day the original indictment was returned, Perez produced the checks. All sixteen checks contained Li's apparent signature. Subsequently, the government requested an order compelling Li to produce handwriting exemplars. Li objected; the trial court held a hearing on the issue and issued the requested order. Li complied with the order and at trial stipulated that he had signed the checks. On appeal, Li argues the district court had no authority to issue such an order after the indictment had been filed.

■■ A challenge to a court's authority to issue an order is a challenge to its jurisdic-

tion or power. Such challenges are legal questions and are reviewed *de novo*. *Duffy v. United States*, 966 F.2d 307, 310 (7th Cir.1992). Contrary to the government's contention, Li has not waived this jurisdictional argument.

■ The government cites two independent sources for the lower court's power to issue this order, Fed.R.Crim.Proc. 17(c) and the All Writs Act. Rule 17(c) is inapplicable.

The second source, however, does apply. The All Writs Act provides as follows:

The Supreme Court and all other courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

■ Federal courts have long recognized that the purpose of the All Writs Act is to provide the instruments necessary to perform their duty, assuming those instruments are "agreeable" to the usages and principles of law. *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969). Courts may rely on this statute to issue orders necessary for conducting factual inquiries. *Id.* Handwriting exemplars are common legal instruments in criminal trials. Here, the exemplars were crucial to a determination of guilt or innocence, as Li's purported signature was on all the checks in question. Furthermore, Li relies heavily on his argument that because the order occurred post-indictment, it constituted improper discovery. Li's own employee, Josie Perez, however, was largely responsible for the delay. Had she produced the checks during her grand jury appearance, as ordered in her subpoena, the government would have seen Li's signature and could have ordered the exemplars at that time. The post-indictment nature of the order did not diminish the trial court's authority to issue the order. The district court had authority to require the handwriting exemplars.

The third argument raised on appeal alleges error in the trial court's admission of part, but not all, of an oral statement made by Li. The government called Harry Kurshenbaum, President of Local 73 during these events. When Kurshenbaum first learned of Li's payments to Hogan, he arranged a meeting with Li. During this conversation, Li admitted to making the payments. When Kurshenbaum asked why Li did not report Hogan's apparent extortion earlier, Li replied that "Danny would put an axe in my head". Li sought admission of the whole conversation, including Li's response to Kurshenbaum's question. The district court allowed Kurshenbaum to testify regarding Li's admission but prohibited the axe statement as irrelevant, unless the defendant raised a coercion defense.[3]

■ Li argues the axe statement was admissible as part of the whole oral statement. This court will not reverse a lower court's evidentiary ruling on completeness grounds absent an abuse of discretion. *United States v. Dent*, 984 F.2d 1453, 1460 (7th Cir.1993). The Federal Rules of Evidence codified the Rule of Completeness in Fed.R.Evid. 106, which states:

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

We have recently refused to extend this rule to oral statements but have held that Fed.R.Evid. 611(a) grants district courts the same authority regarding oral statements which Fed.R.Evid. 106 grants regarding written and recorded statements. *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir.1993). Therefore, the rule of completeness applied to the oral statement. The question is whether the trial court breached this rule.

■ A trial judge need not admit every portion of a statement but only those

---

**3.** The district court first made this ruling in its disposition of certain pretrial motions and declined to reverse itself at trial. Both during and prior to trial the court informed Li that if he undertook a coercion defense, the axe statement

would be admissible. Li's counsel did not raise the defense and admitted to the court that the defendant was not entitled to the coercion jury instruction. (Tr. 185–186).

needed to explain portions previously received. *United States v. Haddad,* 10 F.3d at 1258. To determine whether a disputed portion is necessary, the district court considers whether (1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence. *United States v. Velasco,* 953 F.2d 1467, 1475 (7th Cir.1992). Here, the admitted portion contained an admission by defendant Li that he had made payments to defendant Hogan. The excluded statement was regarding an alleged threat by defendant Hogan to Li. No statement regarding any alleged threat was necessary to explain or understand Li's simple admission to making payments. The alleged threat may have helped place the statement in context and avoided misleading the jury if Li had pursued a coercion defense. But when asked by the trial judge, Li's counsel explicitly stated that Li would not pursue such a defense. Accordingly, the lower court did not abuse its discretion in ruling that the axe statement was not necessary for completeness.

In the final argument raised on appeal, the government argues the district court erred by vacating Hogan's conviction on the money laundering count. The superseding indictment which added the money laundering count was filed December 16, 1993. The money laundering count, which alleged a violation of 18 U.S.C. § 1956, had a five year statute of limitations. Therefore, the government had to prove the violation occurred on or after December 16, 1988. The last HA check written by Li as payable to Morley Graphics was dated December 12, 1988. Schlesinger deposited the check in her corporate account on December 15, 1988. The bank, although it credited her account with the deposit effective December 15, did not complete processing the deposit until the next day, December 16, 1988. The trial judge determined that the offense was completed on December 15, 1988 and vacated Hogan's conviction. On appeal, the government argues that the violation did not occur until the bank completed its processing of the check.

This dispute addresses an issue of statutory interpretation, which we review *de novo. United States v. Holloway,* 991 F.2d 370, 372 (7th Cir.1993).

Hogan was charged pursuant to 18 U.S.C. § 1956(a)(1) which states:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity— ...

The statute defines the term "transaction" to include deposits. 18 U.S.C. § 1956(c)(3). Though the statute provides no further illumination of the term deposit, we have previously defined it broadly enough to include both the delivery of a check to a bank and the bank's processing of that check. *United States v. Bell,* 936 F.2d 337, 342 (7th Cir. 1991). The statute further defines "conducts" as including "initiating, concluding, or participating in initiating, or concluding a transaction". 18 U.S.C. § 1956(c)(2). Note the conjunctive "or". Given these definitions, we adopt the district court's conclusion:

> As § 1956(c)(3) makes clear, either initiating "or" concluding a transaction constitutes the conducting of a transaction. There is no requirement that the transaction be both initiated and concluded. Merely initiating a deposit satisfies the conducting a financial transaction element of the offense. All the other elements of the offense having been completed at an earlier time, the § 1956(a)(1)(B)(i) offense charged in Count Four was completed upon the initiation of the deposit.

*United States v. Li,* 856 F.Supp. 421, 423 (E.D.Ill.1994).

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.