73 F.3d 364
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Larry O'DELL, Defendant-Appellant.
 No. 95-1069.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 15, 1995.
Decided Dec. 27, 1995.
 ORDER
 
 1
 Defendant-appellant Larry O'Dell appeals the district court's denial of a motion to suppress statements. O'Dell was incarcerated in the Sangamon County jail following an indictment on federal drug charges. He was placed in the same cell with Scott Herman. This was not done at the request or direction of the government. Unbeknownst to O'Dell, Herman was a confidential source for the Illinois State Police. Herman elicited information from O'Dell regarding his case. Because we find that the informant was acting as a government agent when he spoke to O'Dell, the conversations constitute questioning in violation of O'Dell's Sixth Amendment right to counsel. Accordingly, we reverse the decision of the district court.
 
 I.
 
 2
 O'Dell was indicted for conspiracy to possess cocaine with intent to distribute it, and aiding and abetting the distribution of cocaine, in violation of 18 U.S.C. Sec. 2, and 21 U.S.C. Secs. 841(a) and 846. In March 1994, he was incarcerated at Sangamon County Jail pending trial. While in jail, he spoke extensively about his case with his cellmate, Scott Herman. Herman had been incarcerated on theft charges since January 12, 1994. O'Dell initially complained that he had been "set up" buying and selling cocaine, that Special Agent Bennie O'Neal of the Illinois State Police was trying to "railroad him," and confided that he intended to lie about who actually sold the cocaine.
 
 
 3
 Unbeknownst to O'Dell, Herman had served as a confidential informant for Special Agent O'Neal for several years, providing information about drugs and drug trafficking. Herman first signed a formal agreement in 1987, agreeing both to "provide information in regards to ongoing criminal activity of others," and to abide by the terms and conditions of the confidential source agreement. This written agreement remained on file at the time Herman spoke to O'Dell. Herman testified that he was subject to the agreement when he spoke to O'Dell and that, to his knowledge, it had never been revoked. The district court specifically found, however, that immediately prior to sharing the cell with O'Dell, Herman was not actively engaged as a confidential informant with the Illinois State Police. While in jail but before O'Dell became his cellmate, Herman received $500 for work as a confidential informant. About the same time, Agent O'Neal recommended that Herman receive a 120-day "boot camp" sentence instead of prison, because of his services as an informant. The district court found, however, that no evidence was presented that either O'Neal or any other government agent promised Herman any benefit in return for information about O'Dell.
 
 
 4
 After the initial conversation with O'Dell, Herman made a collect call to O'Neal's office, which O'Neal accepted. Herman told O'Neal that O'Dell had discussed his case and mentioned O'Neal's name. O'Neal asked, "What did he say?" Herman told O'Neal about the substance of his conversation with O'Dell, and informed him that he would continue to listen to what O'Neal had to say. When O'Neal heard this plan, according to Herman, O'Neal said, "That's fine," but added, "Now, I didn't tell you to say that," and "Whatever he tells you, he tells you, you know. I didn't ask you to tell me anything." Over the next three weeks, O'Dell and Herman had at least four more conversations about O'Dell's case. Herman then compiled a written report of the conversations. He called O'Neal, told him about the report, and asked if he was interested in it. O'Neal said he was, and picked it up at the jail the next day.
 
 
 5
 Once it became apparent that the government intended to use Herman's reports in their case against O'Dell, O'Dell filed a motion to suppress the statements. When the district court denied that motion, O'Dell entered a conditional plea of guilty to the conspiracy charge, reserving the right to appeal the denial of the motion to suppress. Fed.R.Crim.P. 11(e)(1)(a), 11(a)(2). The government dismissed the charge of aiding and abetting. The district court subsequently sentenced O'Dell to ten years in prison.
 
 II.
 
 6
 The government violates an accused's Sixth Amendment right to counsel when, after indictment, government agents secretly elicit incriminating statements in the absence of counsel. Massiah v. United States, 377 U.S. 201, 206 (1964). Statements obtained by an informant are the functional equivalent of interrogation, and violate the accused's rights if the informant "took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). Consequently, a jailhouse informant violates an accused's Sixth Amendment right to counsel when he (1) deliberately elicits statements (2) while acting as a government agent. United States v. Li, 55 F.3d 325, 328 (7th Cir.1995).
 
 
 7
 In this case, Herman's purpose in talking with O'Dell was deliberately to elicit information about O'Dell's case, which Herman intended to provide to Agent O'Neal. We must determine whether Herman was acting as a government agent. As the district court stated:
 
 
 8
 At issue in this case is whether Scott Herman was acting under the direction of the Illinois State Police when he elicited information from the Defendant. If Herman was "acting by prearrangement," the Defendant's Sixth Amendment Rights were violated. [United States v. Henry, 447 U.S. 264, 273 (1980).]
 
 
 9
 United States v. O'Dell, No. 93-30052, at 3 (C.D.Ill. Oct. 3, 1994).
 
 
 10
 Traditional principles of agency determine government agent status. Li, 55 F.3d at 328. Only an inmate who has been promised consideration in exchange for gathering information is deemed an agent. United States v. York, 933 F.2d 1343, 1357 (7th Cir.), cert. denied, 502 U.S. 916 (1991). Similarly, there must be an understanding that the government official/principal has control--exercised or unexercised--while the informant/agent serves subject to that control. Id.; Li, 55 F.3d at 328. In contrast, an independent entrepreneur who deliberately elicits incriminating information from a cellmate is not a government agent. United States v. Malik, 680 F.2d 1162, 1165 (7th Cir.1991).
 
 
 11
 We also recognize that law enforcement officials and informants often develop ongoing symbiotic relationships. York, 933 F.2d at 1357-58. Where such a relationship exists, the informant acts as an agent when the law enforcement official tells him to collect information, even if the relationship evolves from an original exercise of initiative by the informant. Id. at 1357; see also Henry, 447 U.S. at 273. In the jailhouse context, the government violates the Sixth Amendment by exploiting the opportunity to question an accused secretly after indictment, regardless of who creates the opportunity for questioning. United States v. Johnson, 954 F.2d 1015, 1019-20 (5th Cir.1992) (citing Maine v. Moulton, 474 U.S. 159, 176 (1985)).
 
 
 12
 We review the denial of a motion to suppress evidence for clear error. United States v. Rice, 995 F.2d 719, 722 (7th Cir.1993). "We may, however, draw our own legal conclusions from the lower court's factual findings." Li, 55 F.3d at 328. In the case at bar, we do not dispute the district court's findings of fact. Nonetheless, we respectfully disagree as to their legal significance, and we conclude as a matter of law that Herman acted as a government agent when he spoke to O'Dell. Cf. York, 933 F.2d at 1358.
 
 
 13
 The facts demonstrate that Herman and O'Neal had a symbiotic relationship within the meaning of York. See York, 933 F.2d at 1357-58. Although the government did not ask that O'Dell be placed in a cell with Herman, it was Herman's past contact with Agent O'Neal pursuant to the confidential source agreement and the specific mention of O'Neal's name that prompted Herman to inform on O'Dell. O'Neal also readily accepted a collect call from Herman, whom he knew to be in jail, and he later hastened to the jail to collect the information Herman gathered. This is different from an "entrepreneur" hoping to make a "sale" to the government. Cf. United States v. Watson, 894 F.2d 1345, 1348 (D.C.Cir.1990). Moreover, when Herman first became a confidential informant, he understood that his probation would not be revoked as long as he fulfilled his obligation to provide information. In the case at bar, Herman had recently received from O'Neal a recommendation for a "boot camp" sentence in lieu of incarceration for yet another theft offense. Even though the recommendation was made before O'Dell became his cellmate, Herman still awaited the imposition of sentence.
 
 
 14
 The government in its brief, and the district court in its memorandum, give great significance to the fact that Herman was not specifically asked to gather information from O'Dell or any other person, and that Herman was not promised any benefit in return for information about the Defendant. The fact that the government was not closely managing Herman's actions in prison does not insulate the government from responsibility for Herman's actions. As we stated in York, "the relevant question ... is whether the [government] told [the informant] to collect information, not whether it told him exactly how or when to collect it, or from whom." York, 933 F.2d at 1358 (emphasis in original). In York, we found that an informant was a government agent because he had an informal agreement with an FBI agent that he would be rewarded for "suitable information obtained from any source...." Id. (emphasis added). Here, the informant had a signed, written confidential source agreement with the government to provide information on the criminal activities of others.
 
 
 15
 We do not suggest that once a person becomes a confidential informant, he remains a government agent for life. If O'Neal had disaffirmed the confidential source agreement, the outcome might be different. The facts of this case, however, are more compelling than the facts of York and require us to find that Herman was a government agent when he elicited statements from O'Dell. O'Neal did not simply act upon Herman's first call and use the incriminating statements that Herman had collected as an "entrepreneur." O'Neal instead, with knowledge of Herman's intentions, waited to act until more information had been gathered. He waited to act until Herman called him collect a second time. See id. at 1357 (stating that it is the ability of the principal to control the agent, whether exercised or unexercised, that indicates agency relationship).
 
 
 16
 Agent O'Neal impermissibly exploited his relationship with Herman. The Supreme Court has stated that the Sixth Amendment's guarantee of a right to counsel
 
 
 17
 includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.... [K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity.
 
 
 18
 Maine v. Moulton, 106 S.Ct. 477, 487 (1985) (affirming the suppression of taped conversations between the defendant and his former codefendant, who was cooperating with the police). Illinois did not intentionally create the opportunity here by placing Herman in O'Dell's cell but it did knowingly exploit an opportunity by failing to act on Herman's first call and by failing to disaffirm Herman's expressed intent to elicit information.
 
 
 19
 In the language and principles of agency, Agent O'Neal ratified Herman's actions, thus reaffirming the agency relationship. "A principal ratifies a contract made by an agent when, with knowledge of all material facts, [the principal] either expresses its assent to the contract or fails to disaffirm the contract within a reasonable time and accepts benefits under it." Hardin, Rodriguez & Boivin v. Paradigm Ins. Co., 962 F.2d 628, 634 (7th Cir.1992) Both Herman and O'Neal acted as though there were an agreement between them, see York, 933 F.2d at 1357, which the government then impermissibly exploited. That O'Neal told Herman he could not instruct him to gather information from O'Dell does not alter the agency relationship. The Fifth Circuit has noted that "even when officers instruct an agent not to ask a defendant questions about his case, if the agent does more than just listen to incriminating remarks, a sixth amendment violation occurs." Blackmon v. Scott, 22 F.3d 560, 567 (5th Cir.), cert. denied, 115 S.Ct. 671 (1994). We agree with our sister circuit. The government cannot disavow an agency relationship simply by reciting "magic language" to create a facade of admissibility. Consequently, we hold that Herman acted as a government agent when he spoke to O'Dell. As a result, O'Dell's statements must be suppressed. The decision of the district court is REVERSED.