**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ELENO OSORIO-SOTO,

Defendant-Appellant.

No. 96-2184
(Dist. of New Mexico)
(D.C. No. CR-94-721-9-JC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **McWILLIAMS** and **MURPHY**, Circuit Judges.

Eleno Osorio-Soto, Cipriano Zamudio, and Alfredo Pando were tried jointly and each convicted of conspiracy to possess with intent to distribute more than five kilograms of cocaine. Osorio-Soto appeals his conviction claiming that

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(1) the trial court improperly admitted hearsay statements by Zamudio and Pando through the testimony of former codefendant Jose Megallon and (2) there was insufficient evidence to support his conviction.  We reverse.

BACKGROUND

In November 1994, authorities found over 500 pounds of cocaine in a hidden compartment of a trailer.  Subsequent investigation revealed that Jose Megallon had leased the trailer.  In January 1995, Megallon voluntarily went to a Drug Enforcement Administration (DEA) office after being contacted by police.  He provided federal agents with a statement and agreed to cooperate by allowing the agents to tape conversations between him and other alleged conspirators.

Megallon pleaded guilty to conspiracy and agreed to testify for the government at the trial of Osorio-Soto, Zamudio, and Pando.  Through Megallon's testimony, the government introduced and played three conversations which were taped while Megallon was cooperating with the DEA:  a January 26, 1995 conversation between Megallon and Zamudio; a February 14, 1995 phone conversation between Megallon and Pando; and a February 22, 1995 conversation between Megallon and Zamudio.  Additionally, the jury was provided with English transcripts of the taped conversations, which were primarily in Spanish.  Zamudio, Pando, and Osorio-Soto did not testify at trial.  The only evidence

linking Osorio-Soto to the conspiracy was the testimony of Megallon and the taped conversations between Megallon and codefendants Zamudio and Pando.

DISCUSSION

During trial, Osorio-Soto objected to the admission of the three taped conversations and the transcripts of those conversations on hearsay grounds. The trial judge ruled that the tapes and transcripts were admissible as coconspirator statements. Rule 801(d)(2)(E) of the Federal Rules of Evidence provides: "A statement is not hearsay if . . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." A court may admit evidence under this rule only if it determines "by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of, and in furtherance of, the conspiracy." *United States v. Williamson*, 53 F.3d 1500, 1517-18 (10th Cir. 1995) (citations omitted); *see also United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995); *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).

Osorio-Soto argues that the taped statements and transcripts were improperly admitted because the statements were not made during the course of the conspiracy nor were they in furtherance of the conspiracy. This court reviews the district court's findings that particular statements were made during the

-3-

course and in furtherance of a conspiracy for clear error. *See United States v. Olivo*, 69 F.3d 1057, 1066 (10th Cir. 1995), *opinion supplemented on rehearing,* 80 F.3d 1466 (10th Cir.), *cert. denied*, 117 S.Ct. 265 (1996); *Williamson*, 53 F.3d at 1517; *Urena*, 27 F.3d at 1490. The district court's decision to admit evidence under the coconspirator exception is reviewed for abuse of discretion. *See Olivo*, 69 F.3d at 1066; *Williamson*, 53 F.3d at 1517.

For the taped conversations and transcripts to be admissible, the government was required to show by a preponderance of the evidence that the statements were made both "during the course" and "in furtherance of" the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *see also United States v. Perez*, 989 F.2d 1574, 1578-79 (10th Cir. 1993) (en banc) (discussing the importance of both requirements). "A coconspirator statement is made 'during the course' of the conspiracy if it is made before '"the objectives of the conspiracy have either failed or been achieved."'" *Owens*, 70 F.3d at 1126 (quoting *Perez*, 989 F.2d at 1579 (quoting Fed. R. Evid. 801(d)(2)(E) advisory committee note)); *see also Krulewitch v. United States*, 336 U.S. 440, 442-43 (1949) (holding declaration made after conspiracy's "objectives either had failed or had been achieved" was inadmissible because it was not made pursuant to and in furtherance of the conspiracy). Statements made to conceal criminal conduct after the main objective of the conspiracy has either failed or been achieved are not admissible

as coconspirator statements. *See Lutwak v. United States*, 344 U.S. 604, 616-18 (1953); *Krulewitch*, 336 U.S. at 443-44; *Perez*, 989 F.2d at 1579; *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir. 1984); *see also Dutton v. Evans*, 400 U.S. 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise.").

In this case, the cocaine was seized by the government on November 16, 1994. While the indictment alleged a conspiracy from "on or about the 1st day of August, 1994 to on or about the 28th day of February, 1995," the government never alleged the conspiracy involved any drug quantities beyond those seized in November 1994 nor were any additional drug transactions alleged. *Cf. Lutwak*, 344 U.S. at 616-17 (holding declaration to conceal crime was outside scope of conspiracy even though indictment alleged conspiracy to conceal). This case is therefore distinguishable from those involving continuing drug transactions. The seizure of the drugs in November 1994 ended the conspiracy because it was no longer possible for conspirators to achieve their objectives. The taped conversations, however, did not occur until January and February of 1995, over

two months after the government had seized the cocaine and successfully prevented completion of the conspiracy objectives. Under these facts, the district court's finding that the taped conversations occurred during the course of the conspiracy was clearly erroneous.[1] *Cf. Silverstein*, 737 F.2d at 867 (holding coconspirator's declaration, made several weeks after central objective of conspiracy was attained, inadmissible because it was not made during conspiracy). Because the conversations did not occur "during the course" of the conspiracy, the district court abused its discretion in admitting the evidence against Osorio-Soto.

Osorio-Soto's second contention is that there was insufficient evidence to convict him of conspiracy. Having ruled that the taped conversations and transcripts were improperly admitted against Osorio-Soto, this court must

---

[1]The government's reliance on *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995), is misplaced. In *Williamson*, the defendant was involved in a continuing conspiracy to distribute cocaine from approximately January 1986 to October 1991, with the exception of a seven-month period from the fall of 1988 to the spring of 1989, in which drug operations ceased because of a related investigation. *See id*. at 1507-08. The challenged statements in *Williamson* were made in October 1990 and January 1991 and, therefore, "were well within the time frame of the conspiracy at issue." *Id*. at 1520. The important question in *Williamson*, therefore, was not whether the statements occurred during the time frame of the conspiracy but whether they furthered the objectives of the conspiracy. *See id*. at 1520-21 (holding that statements which relate to (1) the identity and roles of coconspirators; (2) avoiding detection by law enforcement officers; (3) allying the fears and suspicions of individuals; and (4) inducing future involvement in the conspiracy may all be "in furtherance of" a conspiracy).

consider whether, in the absence of the taped conversations and transcripts, there was sufficient evidence to convict Osorio-Soto.

> In determining the sufficiency of the evidence, we review the record de novo, *United States v. Grimes*, 967 F.2d 1468, 1472 (10th Cir.), *cert. denied*, 506 U.S. 927 (1992), and ask only whether, taking the evidence-- "both direct and circumstantial, together with the reasonable inferences to be drawn therefrom"--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

*Urena*, 27 F.3d at 1489 (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986)); *see also Williamson*, 53 F.3d at 1514. This court "cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference." *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991); *accord United States v. Anderson*, 981 F.2d 1560, 1564 (10th Cir. 1992).

To support a conviction of conspiracy, "the government must prove, beyond a reasonable doubt, that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, that the defendant knowingly and voluntarily became a part of it, and that the alleged coconspirators were interdependent." *Williamson*, 53 F.3d at 1516 (internal quotations omitted); *see also United States v. Jones*, 44 F.3d 860, 864-65 (10th Cir. 1995).

While the testimony at trial clearly established that Osorio-Soto knew the other codefendants[2] and was involved in legitimate business transactions with Megallon, the only evidence the government presented linking Osorio-Soto to the conspiracy, excluding the inadmissible hearsay, was the testimony of Megallon regarding a meeting which occurred at a tire shop. Megallon testified that when he arrived at the tire shop, he met up with Osorio-Soto who told him, "Go over there, because Shorty [Pando] wants to talk to you." Megallon testified that when he went to where Pando and Zamudio were, they started "talking, talking, and talking about things related to drugs and everything." He testified that both Pando and Zamudio asked him to participate in the conspiracy by renting a trailer. He then stated that Osorio-Soto came over and when Osorio-Soto approached, Pando said, "No, no, no. There's no problem. You already know about this."

Contrary to the government's assertion, this evidence is insufficient to show Osorio-Soto was a participant in the conspiracy. Megallon testified that Pando and Zamudio invited him to join the conspiracy. This conversation occurred outside Osorio-Soto's presence.

Read in the light most favorable to the government, the most a jury could infer from Pando's statement was that Osorio-Soto had knowledge of the

---

[2]Megallon testified that Osorio-Soto had a familial association with Zamudio and a business association with Pando.

conspiracy. The government, however, must prove beyond a reasonable doubt not only that Osorio-Soto knew the objectives of the conspiracy, but also that he knowingly and voluntarily became a part of the conspiracy. *See Anderson*, 981 F.2d at 1564 ("'[T]he Government was required to show, by clear and unequivocal evidence, [defendant's] knowledge that the object of the conspiracy was the distribution of marijuana, *and his agreement to cooperate* in achieving that object.'" (quoting *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986) (emphasis added))). "Mere knowledge of illegal activity . . . does not by itself establish that a person has joined in the grand conspiracy." *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992); *see also United States v. Riggins*, 15 F.3d 992, 994 (10th Cir. 1994) (holding that even if defendant knew her mother and sister were hiding drugs in van, defendant's presence in the van was insufficient to establish she "knowingly and voluntarily became part of the conspiracy"). Likewise, mere association with conspirators is insufficient to support a conspiracy conviction. *See Jones*, 44 F.3d at 866. "One does not become a participant in a conspiracy merely by associating with conspirators known to be involved in crime. One must agree to participate in order to be convicted for conspiracy." *Id.* (citations omitted); *see also Anderson*, 981 F.2d at 1564, *Evans*, 970 F.2d at 669; *Horn*, 946 F.2d at 741.

The testimony of Megallon regarding the conversation at the tire shop is insufficient to establish Osorio-Soto knowingly and voluntarily became a participant in the conspiracy. Megallon's testimony, when viewed in the light most favorable to the government, at most established that Osorio-Soto had some knowledge of the conspiracy. Knowledge of the conspiracy and association with conspirators, however, is insufficient to convict Osorio-Soto.

The government does not cite any other evidence in the record showing Osorio-Soto agreed to participate in the conspiracy. After *de novo* review of the record, we find no other evidence from which a jury could infer that Osorio-Soto knowingly and voluntarily became a participant in the conspiracy. There was thus insufficient evidence to convict Osorio-Soto of conspiracy to distribute cocaine.[3]

---

[3]Having concluded there was insufficient evidence to convict Osorio-Soto after excluding the inadmissible hearsay, we need not consider his argument that admission of the taped conversations and transcripts violated his confrontation rights.

For the foregoing reasons, we **REVERSE** and **VACATE** the conviction of Eleno Osorio-Soto and **REMAND** to the district court for action consistent with this opinion.

Judge McWilliams dissents.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge