**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CIPRIANO ZAMUDIO,

Defendant-Appellant.

No. 96-2182
(District of New Mexico)
(D.C. No. CR 94-721-JC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **McWILLIAMS** and **MURPHY**, Circuit Judges.

Cipriano Zamudio, Alfredo Pando, and Eleno Osorio-Soto were tried jointly and convicted of conspiracy to possess with intent to distribute more than five kilograms of cocaine. Zamudio appeals his conviction claiming that (1) a codefendant's counsel improperly commented on his right to remain silent; (2) the limitations placed on Zamudio's cross-examination of Agent Mendonca violated

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his right of confrontation; and (3) the trial court improperly admitted hearsay statements by Pando through the testimony of former codefendant Jose Megallon in violation of his confrontation rights. This court affirms.

## Background

In November 1994, authorities found over five kilograms of cocaine in a hidden compartment of a trailer. Subsequent investigation revealed that Jose Megallon had leased the trailer. In January 1995, Megallon voluntarily went to a Drug Enforcement Administration (DEA) office after being contacted by police. He provided federal agents with a statement and agreed to cooperate by allowing the agents to tape conversations between him and other alleged conspirators.

Zamudio, Pando, Osorio-Soto, Megallon, and other alleged coconspirators were indicted for conspiracy to possess with intent to distribute more than five kilograms of cocaine. Megallon pleaded guilty to conspiracy and agreed to testify for the government. Zamudio, Pando, and Osorio-Soto were tried jointly and all three were convicted of conspiracy in January 1996. Zamudio's appeal centers on the testimony presented by two government witnesses at the trial: Tony Mendonca, a DEA agent, and Megallon.

At trial, Agent Mendonca testified that he, along with Agent Chris Hoover, arrested Zamudio and took Zamudio to a DEA office where he was questioned. Referring to a report, Mendonca testified that Zamudio, after being read his

*Miranda* rights, admitted entering into an agreement with Megallon to use a trailer for the transportation of cocaine. Mendonca also testified that Zamudio admitted going with Megallon to lease a trailer suitable for the construction of a secret compartment and admitted, when a satisfactory trailer was not found, agreeing to use a trailer Megallon already possessed.

On cross-examination, counsel for Osorio-Soto asked Mendonca whether the statement he attributed to Zamudio was made after Zamudio's arrest. When Mendonca answered in the affirmative, Osorio-Soto's counsel made a motion for severance or to strike the statement, arguing:

> I don't have any guarantee that Mr. Zamudio is going to be taking the stand, so I would ask the Court to strike any statement in regards to what Mr. Mendonca said that Mr. Zamudio said in regards to my client, Mr. Osorio-Soto. As an alternative, I will go ahead and ask for a severance in the case if Mr. Zamudio does not take the stand.

Further explaining his objection, Osorio-Soto's counsel stated:

> Your Honor, based on the testimony of Mr. Mendonca, he states that he questioned Mr. Zamudio and that Mr. Zamudio showed that there was in fact a conspiracy involving the trailer. That's the reason for asking for a severance, Your Honor. The trailer is going to be used to implicate my client, Mr. Osorio-Soto. I don't have any way to cross-examination [sic] Mr. Zamudio regarding the accuracy or inaccuracy of the statement allegedly made by him.

The court denied Osorio-Soto's motion.

Counsel for Zamudio then cross-examined Mendonca. In her cross-examination of Mendonca, she attempted to use Agent Hoover's report,

Government Exhibit 20, which set out completely Zamudio's post-arrest statements, including statements describing Pando's and Osorio-Soto's involvement in the conspiracy. Both Osorio-Soto and Pando objected to use of the report on hearsay grounds. When the trial court inquired into the government's position, the prosecutor stated his belief that certain portions of the report needed to be redacted. The trial court reserved ruling on whether the document could be received in whole or in part. The government then advised the trial court that it had a redacted copy of the exhibit. Neither Osorio-Soto nor Pando objected to the use of the redacted report. The government, therefore, withdrew Government Exhibit 20 and Zamudio's counsel continued cross-examining Mendonca using the redacted report, Defendant's Exhibit 2-A. Because the report was prepared by Agent Hoover, rather than Mendonca, the redacted report was provisionally received by the court, subject to publication only upon testimony by Hoover verifying the document.

Later during the cross-examination of Mendonca, Zamudio's counsel asked if Zamudio had provided information to the agents about "the agreement between Osorio and Pando to smuggle cocaine." Osorio-Soto's counsel immediately objected to the question and moved for severance. The court denied severance and overruled the objection. Mendonca answered the question in the negative and Zamudio's counsel continued the cross-examination. The government then

objected on the grounds that allowing Zamudio's counsel to elicit testimony regarding what Zamudio said about the other codefendants would create a *Bruton* problem. *See Bruton v. United States*, 391 U.S. 123 (1968). The court sustained the government's objection and limited Zamudio's cross-examination to the line of inquiry that was addressed in direct examination.

The other government witness whose testimony is relevant to this appeal is Megallon. Megallon, a coconspirator turned government informant, testified about his involvement in the conspiracy and interactions with the defendants. Additionally, through Megallon's testimony, the government introduced and played three conversations which were taped while Megallon was cooperating with the DEA: a January 26, 1995 conversation between Megallon and Zamudio; a February 14, 1995 telephone conversation between Megallon and Pando; and a February 22, 1995 conversation between Megallon and Zamudio. The jury was also provided with English and Spanish transcripts of these taped conversations, which were primarily in Spanish. While Zamudio does not challenge the admissibility of the taped conversations between Megallon and himself, he contends the trial court erred in admitting the telephone conversation between Pando and Megallon. Pando, who fled after the first day of trial, did not testify, but the trial of the charges against him proceeded *in absentia*.

**Comment on Zamudio's Failure to Testify**

On appeal, Zamudio argues that Osorio-Soto's counsel impermissibly commented on Zamudio's failure to testify in violation of his Fifth Amendment rights. Specifically, in commenting on his motion for severance or to strike statements attributed to Zamudio by Agent Mendonca, Osorio-Soto's counsel, in the presence of the jury, stated: "I don't have any guarantee that Mr. Zamudio is going to be taking the stand"; "I will go ahead and ask for a severance in the case if Mr. Zamudio does not take the stand"; and "I don't have any way to cross-examin[e] Mr. Zamudio regarding the accuracy or inaccuracy of the statement allegedly made by him."[1]

Zamudio did not object to these statements during trial. Therefore, our review is limited to plain error. *See United States v. Toro-Pelaez*, 107 F.3d 819, 827 (10th Cir.), *cert. denied*, 118 S. Ct. 129 (1997). This court may correct an error not raised at trial only if we find there is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, [this] court

---

[1]At the outset of the trial, the district judge instructed the parties that "no bench conferences [would] be permitted" and that all speaking objections would be considered either "before the day's business begins, during recess or at the end of the day." While this court appreciates the need for efficiency, the judge's instructions created problems for the parties in this case. Had the judge permitted limited but necessary bench conferences, counsel for Osorio-Soto could have explained his objection to the testimony outside the hearing of the jury. This issue therefore could have been avoided entirely.

may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 117 S. Ct. 1544, 1548-49 (1997) (alterations in original) (citations and internal quotations omitted); *see also* Fed. R. Crim. P. 52(b).

For purposes of this appeal, we assume, without deciding, that the statements Zamudio challenges created error and the error is plain. Before this court may correct such an error, however, the defendant has the burden of showing that the error affected substantial rights, which generally means the defendant must show he was prejudiced by the error. *See United States v. Olano*, 507 U.S. 725, 734 (1993); *see also Toro-Pelaez*, 107 F.3d at 827-28. Furthermore, even if defendant meets his burden of showing the error affected substantial rights, this court may not order correction unless it also finds the error seriously affected the fairness, integrity or public reputation of judicial proceedings. *See Johnson*, 117 S. Ct. at 1550. In this case, Zamudio has failed to show he was prejudiced by the alleged error. Furthermore, even if Zamudio had shown prejudice, there exists no basis in the record for concluding that the error seriously affected the fairness, integrity or public reputation of judicial proceedings.

Zamudio argues the statements were prejudicial because (1) they were direct comments on his failure to testify; (2) the nature of the government's case was such that only his own testimony could have fully contradicted the government's evidence; and (3) the government's case relied heavily on the testimony of Megallon, a convicted informant, and the challenged testimony of Agent Mendonca regarding Zamudio's admission. A number of other factors, however, mitigate any prejudicial effect the statements could have had on the jurors' deliberations.

First, the statements, while made in the presence of the jury, were not directed at the jurors. This case is therefore distinguishable from cases involving comments made to jurors during closing arguments.

Second, the comments did not suggest the jurors should infer Zamudio's guilt from his failure to testify. *Cf. United States v. Wing*, 104 F.3d 986, 990-91 (7th Cir. 1997) (holding court's remarks, while directly commenting on defendant's failure to testify, did not constitute plain error because they did not invite jurors to infer guilt from defendant's failure to testify and there was substantial evidence of defendant's guilt); *United States v. Sarno*, 73 F.3d 1470, 1498 (9th Cir. 1995) (holding single improper comment by prosecutor regarding defendant's failure to testify did not mandate reversal when comment did not invite jury to infer guilt from silence and judge gave jurors curative instruction);

-8-

*United States v. Mena*, 863 F.2d 1522, 1534 (11th Cir. 1989) ("When the 'comment' [on the failure of the accused to testify] comes from an actor (such as counsel for a codefendant) without an institutional interest in the defendant's guilt, . . . . the court should ask whether the comment *actually* or *implicitly* invited the jury to infer guilt from silence."). Rather, the comments focused only on the ability of Osorio-Soto to cross-examine Zamudio regarding statements Zamudio made to agents after his arrest.

Third, the jurors were properly instructed that they may not infer guilt from a defendant's failure to testify. Specifically, upon conclusion of the closing arguments, the judge instructed the jury that "a Defendant is presumed by law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all, and *no inference whatsoever may be drawn from the election of a Defendant not to testify*." (Emphasis added.) Jurors are presumed to follow the instructions given to them. *See United States v. Coleman*, 7 F.3d 1500, 1506 (10th Cir. 1993).

Finally, contrary to Zamudio's assertions, there was substantial evidence of his guilt. Not only did Mendonca testify as to Zamudio's post-arrest admission and Megallon testify as to Zamudio's involvement in the conspiracy, but the government also introduced two taped conversations in which Megallon and

Zamudio discussed the conspiracy and what was to be done about the trailer which government agents seized.

Given the numerous factors mitigating any effect of the statements regarding Zamudio's failure to testify, Zamudio failed to meet his burden of showing he was prejudiced by the alleged error. Moreover, the alleged error did not seriously affect the fairness, integrity or public reputation of judicial proceedings. This court therefore holds that the statements by Osorio-Soto's counsel do not constitute reversible error.

### Restriction on Defendant's Cross-Examination of Mendonca

Zamudio contends the district court impermissibly restricted his cross-examination of Agent Mendonca by prohibiting inquiry into portions of Zamudio's post-arrest statement. On direct examination, Agent Mendonca testified that, among other things, Zamudio admitted agreeing to use a trailer for the transportation of cocaine and admitted going with Megallon to rent a suitable trailer. During the cross-examination of Agent Mendonca, Zamudio's counsel tried to elicit testimony regarding other statements Zamudio made at the time of his arrest. Because these additional statements apparently would implicate codefendants Pando and Osorio-Soto, creating a *Bruton* problem, the district court limited Zamudio's counsel to the line of inquiry addressed in direct examination and allowed only a redacted version of defendant's post-arrest statement to be

used. Zamudio maintains that this limitation on his cross-examination of Agent Mendonca violated his confrontation rights. He argues that because Agent Mendonca testified about portions of his post-arrest statement on direct examination, the district court was required to allow him to cross-examine Agent Mendonca concerning other portions of the post-arrest statement which were necessary to place the admitted evidence into context.

"We review de novo whether a defendant's confrontation rights were violated by reason of improper cross-examination restrictions . . . ." *United States v. Pedraza*, 27 F.3d 1515, 1529 (10th Cir. 1994). While the Confrontation Clause guarantees defendants an "*opportunity* for effective cross-examination," it does not guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *accord Pedraza*, 27 F.3d at 1529.

While the government was entitled to introduce Zamudio's admissions under Fed. R. Evid. 801(d)(2)(A), Zamudio was not similarly entitled to offer his own exculpatory statements through the testimony of Agent Mendonca because such statements, if offered to prove the truth of the matter asserted, would constitute hearsay. *See* Fed. R. Evid. 801, 802. Zamudio, however, maintains that because certain portions of his post-arrest statements were admitted on direct

examination, the district court was required to admit other portions of his statement to place the admitted evidence into context.

Rule 106 of the Federal Rules of Evidence provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." While Rule 106 explicitly applies only to writings and recorded statements, the rule of completeness embodied in Rule 106 is "'substantially applicable to oral testimony, as well' by virtue of Fed. R. Evid. 611(a), which obligates the court to 'make the interrogation and presentation effective for the ascertainment of the truth.'" *United States v. Mussaleen*, 35 F.3d 692, 696 (2d Cir. 1994) (quoting *United States v. Alvarado*, 882 F.2d 645, 650 n.5 (2d Cir. 1989)); *see also United States v. Li*, 55 F.3d 325, 329 (7th Cir. 1995); *United States v. Haddad*, 10 F.3d 1252, 1258-59 (7th Cir. 1993); 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 106.02[3] & nn.12-13 (Joseph M. McLaughlin ed., 2d ed. 1997). Accordingly, a redacted version of a defendant's post-arrest statement is impermissible if it "unfairly distort[s] the original" or "exclude[s] substantially exculpatory information." *Mussaleen*, 35 F.3d at 696; *see also United States v. Washington*, 952 F.2d 1402, 1404 (D.C. Cir. 1991); *United States v. Kaminski*, 692 F.2d 505, 522 (8th Cir. 1982).

The rule of completeness, however, does not necessarily require admission of a defendant's entire statement. Rather, only those portions which are "relevant to an issue in the case" and necessary "to clarify or explain the portion already received" need to be admitted. *Haddad*, 10 F.3d at 1259; *see also Li*, 55 F.3d at 329-30; *cf. United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) (discussing Rule 106 and noting that "[a]lthough different circuits have elaborated Rule 106's 'fairness' standard in different ways, common to all is the requirement that the omitted portion be relevant and necessary to qualify, explain, or place into context the portion already introduced" (internal citations and quotations omitted)), *cert. denied*, 117 S. Ct. 1466, 1467 (1997). In determining whether a disputed portion of a statement must be admitted, the trial court should consider whether "(1) it explains the admitted evidence, (2) places the admitted evidence in context, (3) avoids misleading the jury, and (4) insures fair and impartial understanding of the evidence." *Li*, 55 F.3d at 330; *see also Haddad*, 10 F.3d at 1259.

Zamudio's claim that his confrontation rights were violated, therefore, turns on whether the excluded portions of his post-arrest statement were necessary to explain or place into context the evidence admitted during direct examination. If the rule of completeness was not violated by the exclusion of this evidence, the limitation placed on Zamudio's cross-examination was proper because the excluded portions were not otherwise admissible. *Cf. United States v. Thuna*, 786

F.2d 437, 442 n.10 (1st Cir. 1986) (noting that because redaction of report of defendant's post-arrest statements was not prejudicial to defendant, the district court was within its discretion to limit cross-examination regarding the report).

Zamudio did not designate the written report of his post-arrest statements as part of the record on appeal nor did he make a proffer as to what the omitted portions of his statement would have shown. This court is therefore unable to evaluate the precise content of the omitted portions of Zamudio's statement.

In his opening brief Zamudio simply states that the district court improperly limited inquiry into those portions of his post-arrest statement "wherein he attempted to shift the blame from himself to co-defendants Osorio and Pando." Specifically, Zamudio complains that his counsel was unable to inquire into "the context of [his] admissions, the purpose of Pando and Osorio in renting the trailer, and other aspects of an alleged agreement between Osorio and Pando of which Zamudio was not part." In his reply brief he asserts that the omitted portions "attempted to place into context his activities in the alleged conspiracy and contrast them with the purposeful involvement of the co-defendants Osorio and Pando." It appears, therefore, that the excluded portions of Zamudio's statement detail Osorio-Soto's and Pando's involvement in the conspiracy and attempt to shift the blame from Zamudio to his coconspirators based primarily on their more meaningful involvement in the scheme. Zamudio has not argued that

the excluded portions of the statement show he did not participate in the conspiracy in the manner Agent Mendonca testified to on direct examination nor does he argue that the portions show his actions were done only under duress. The excluded portions therefore do not appear to be exculpatory.

This court cannot conclude the omitted portions of Zamudio's post-arrest statements were necessary to explain the admitted evidence or place that evidence into context. If, as it appears, the omitted portions of Zamudio's post-arrest statement did no more than show Osorio-Soto's and Pando's involvement in the scheme, the rule of completeness did not require their admission because Osorio-Soto's and Pando's involvement is not necessary to explain or place into context Zamudio's act of agreeing to participate in the conspiracy or his act of accompanying Megallon to rent a trailer. *Cf. Li*, 55 F.3d at 330 (holding statement that defendant was threatened by codefendant was not necessary to explain or understand defendant's admission to making payment to codefendant absent a coercion defense). Because the record on appeal is insufficient to support Zamudio's assertion that his confrontation rights were violated and because Zamudio's appellate presentation does not suggest any legitimate basis for admission of the redacted portions of his statement, exclusion of the testimony was not error.

**Admission of Taped Conversation**

Zamudio's final argument is that the tape and transcript of the February 14, 1995 telephone conversation between Megallon and Pando constituted inadmissible hearsay and that the district court's erroneous admission of that taped conversation and transcript into evidence violated his confrontation rights because Pando did not testify at the trial. The government maintains the taped statements were properly admitted as coconspirator statements under Fed. R. Evid. 801(d)(2)(E), which provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

In the unpublished opinion, *United States v. Osorio-Soto*, No. 96-2184, 1998 WL 58106 (10th Cir. Feb. 12, 1998), this court considered whether the same taped conversation was properly admitted against Zamudio's codefendant Osorio-Soto.[2] In *Osorio-Soto*, this court held that the taped conversation between

---

[2]Zamudio's codefendant Osorio-Soto argued that all three taped conversations were inadmissible against him: the January 26, 1995 conversation between Megallon and Zamudio, the February 14, 1995 telephone conversation between Megallon and Pando, and the February 22, 1995 conversation between Megallon and Zamudio. *See United States v. Osorio-Soto*, No. 96-2184, 1998 WL 58106, at *1 (10th Cir. Feb. 12, 1998). Zamudio does not appeal admission of the two taped conversation between him and Megallon because a party's own statement may be offered against the party under Fed. R. Evid. 801(d)(2)(A). Zamudio and Osorio-Soto, however, are in the same position as to the taped conversation between Megallon and Pando because neither was a party to the conversation. Both argue that the taped conversation between Megallon and Pando constituted inadmissible hearsay.

Megallon and Pando did not occur "during the course" of the conspiracy and was therefore inadmissible against Osorio-Soto. *See id.* at \*2. Having previously concluded that the taped conversation did not occur during the course of the conspiracy, this court now holds that the tape and transcript were inadmissible against Zamudio. This court, however, may uphold Zamudio's conviction if admission of the taped conversation and transcript constituted harmless error.

Because Zamudio argues admission of the taped conversation violated his confrontation rights, we apply the constitutional harmless error standard. *See United States v. Joe*, 8 F.3d 1488, 1497 (10th Cir. 1993). Accordingly, this court will uphold Zamudio's conviction only if it concludes the error was "'harmless beyond a reasonable doubt.'" *Id*. (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Upon reviewing the record, this court concludes admission of the taped conversation between Pando and Megallon was harmless beyond a reasonable doubt because the evidence it contained implicating Zamudio was extremely weak, while other evidence of his guilt was overwhelming. *Cf. Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (listing "importance of the witness'[s] testimony in the prosecution's case" and "the overall strength of the prosecution's case" among factors courts should consider in determining whether violation of Confrontation Clause constitutes harmless error); *Harrington v. California*, 395 U.S. 250, 253-54 (1969) (holding violation of confrontation rights

-17-

under *Bruton* was harmless beyond a reasonable doubt because case against defendant was overwhelming).

The taped conversation between Megallon and Pando did not mention Zamudio by name. The only apparent reference to Zamudio during the conversation was made by Pando in response to Megallon's statements about the police. Megallon stated that the police had contacted him and he did not know what to tell the police because they already had the trailer. In reply Pando stated, "What do you want me tell you" and repeatedly instructed Megallon to ask "that guy" about the situation. During direct examination, Megallon testified that when Pando told him to talk to "that guy," he understood Zamudio was the person referenced. There is nothing else in the taped conversation implicating Zamudio.

In contrast to the limited evidence of guilt found in the taped conversation between Megallon and Pando, other evidence of Zamudio's guilt was overwhelming. Agent Mendonca testified that Zamudio admitted entering into an agreement with Megallon to transport cocaine and admitted going with Megallon to rent a suitable trailer. Megallon also testified that he met with Zamudio and Pando at a tire shop and that during this meeting, the plan to transport drugs was discussed. Megallon testified that he was asked to participate in the scheme by renting a trailer and both Zamudio and Pando informed him of how the trailer was to be used. He further testified that both Zamudio and Pando accompanied him to

-18-

the rental place and when a suitable trailer was not found, Megallon allowed Zamudio and Pando to use his leased trailer. Additionally, Megallon testified that he subsequently observed new rivets three to four feet from the front of the trailer he delivered to Zamudio and Pando, which is consistent with Danny Martinez's[3] testimony that the seized trailer had a false compartment in the front containing cocaine. Finally, the government introduced two taped conversations between Zamudio and Megallon, discussing the conspiracy and the trailer. Any negative inference which could be drawn from the challenged tape recorded conversation between Pando and Megallon pales in comparison to the overwhelming evidence of guilt found elsewhere in the record. This court therefore concludes the error in admitting the taped conversation was harmless beyond a reasonable doubt.

The judgment of the United States District Court for the District of New Mexico is **AFFIRMED**.

Judge McWilliams concurs in the result.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge

---

[3]Danny Martinez, who is a sergeant with the Motor Transportation Division of the Taxation and Revenue Department for the State of New Mexico, was involved in the search of the seized trailer.