The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 5, 2018

## 2018COA47

**No. 15CA1175 *People v. Short*-15CA1175 — Evidence —
Remainder of or Related Writings or Recorded Statements —
Hearsay Exceptions — Attacking and Supporting Credibility of
Declarant**

Declining to follow *People v. Davis*, 218 P.3d 718 (Colo. App.
2008), a division of the court of appeals holds that a defendant's
exculpatory statement to the police admissible under the rule of
completeness is not subject to impeachment under CRE 806.
Accordingly, the division determines that it was error, albeit
harmless, for the trial court to conclude that the defendant's
statement, if admitted, was subject to impeachment under CRE
806.

The division also rejects the defendant's contention that
reversal is required because three witnesses improperly bolstered
the credibility of the victim.  Finally, the division agrees that the

trial court incorrectly entered separate convictions for sexual assault on a child and sexual assault on a child-pattern of abuse. Because the division determines that the pattern of abuse count acts only as a sentence enhancer, one count has to be vacated.

COLORADO COURT OF APPEALS                                   **2018COA47**

---

Court of Appeals No. 15CA1175
Mesa County District Court No. 13CR1151
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Roger Lee Short,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAILEY
Hawthorne, J., concurs
Welling, J., specially concurs

Announced April 5, 2018

---

Cynthia H. Coffman, Attorney General, Nicole D. Wiggins, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Roger Lee Short, appeals the judgment of conviction and sentence entered on a jury's verdicts finding him guilty of sexual assault on a child and sexual assault on a child-pattern of abuse. We affirm in part, vacate in part, and remand with directions.

## I.     Background

¶ 2     While driving with her Grandmother L in July 2013, the victim, an eight-year-old girl, saw Short napping in the park. The victim began to yell, while ducking down in her booster seat in order to hide from him. When Grandmother L asked what was wrong, the victim responded that she hated Short and was going to stab him someday because he had been "touching" her and "messing with" her. Upon further questioning, the victim said Short had been touching her "down there," pointing to her vaginal area; had masturbated in front of her while the rest of her family had gone outside to smoke; and had told her he would kill her if she ever told anyone. Later, the victim disclosed that Short had also digitally penetrated her anus and made her dance naked.

¶ 3     Short had dated the victim's other grandmother, Grandmother K, for four years, and they often visited the then four-to-seven-year-

1

old victim at the victim's home. During this time, Grandmother L and the victim's mother were concerned that the victim was being sexually assaulted because she had vaginal redness and swelling, experienced behavioral changes, suffered from repeated urinary tract infections, and had regressed in her toilet training. Several times, they asked the victim if Short or anybody else was sexually assaulting her. When Grandmother L asked if "anybody was touching her . . . she would say no. But, if [Grandmother L] asked her if [Short] was touching her, she would not answer [Grandmother L]."

¶ 4 When questioned by police, Short admitted knowing the victim's family and visiting her home. He also stated that he was aware of the victim's incontinence issues and that "someone's abusing her."

¶ 5 The prosecution charged Short with two counts of sexual assault on a child and two counts of sexual assault-pattern of abuse. One set of sexual assault and sexual assault–pattern of abuse charges was based on acts of fondling; the other was based on acts of digital penetration.

¶ 6     At trial, the victim testified in some respects inconsistently to what she had previously told others. Additionally, she could not remember how Short used to "play with her" and if she saw Short touch himself. She had difficulty remembering where Short touched her, although she eventually indicated that he touched her on "her privates." Consequently, the prosecution introduced evidence of the victim's prior statements and of possible reasons for discrepancies or inconsistencies between those statements and the victim's trial testimony.

¶ 7     In his defense, Short presented two witnesses: (1) the victim's primary care physician, who testified that the victim's incontinence issues were attributable to physical abnormalities and not sexual assault; and (2) a clinical psychologist, who testified that Grandmother L's presence during a forensic interview tainted the victim's answers. In closing argument, he asserted that the victim's allegations had been suggested to her by her mother's and Grandmother L's repeated questions about whether Short had sexually abused her, and that the family's repeated questions gave the victim an outlet to assign blame for her incontinence and issues at home. This theory was supported, he argued, by the fact that

the victim waited four years to report the abuse, despite having been repeatedly questioned about it beforehand.

¶ 8    The jury acquitted Short of the sexual abuse counts relating to the digital penetration allegations. It found him guilty, however, of sexual assault on a child and sexual assault on a child-pattern of abuse in connection with the fondling allegations. The trial court imposed two concurrent sentences on Short; the longer was for nine years to life imprisonment in the custody of the Department of Corrections.

## II.    *Bolstering Evidence*

¶ 9    Short contends that the testimony of three witnesses improperly bolstered the victim's credibility. We conclude that reversal is not warranted.

¶ 10    Short focuses on the testimony of the following witnesses:

- a family therapist who, though unfamiliar with the victim or the facts of this case, answered a series of hypothetical questions based on the circumstances of the case to explain how a child like the victim might (1) not be able to disclose in court things such as anal penetration and naked dancing after having disclosed them in a clinical

4

environment; (2) have an extreme visceral reaction upon seeing her abuser for the first time in over a year; and (3) make inconsistent statements, without that necessarily being a sign of fabrication on the child's part;

- a detective who, remembering the therapist's testimony about it not being uncommon for a child to fail to disclose anal penetration, testified that, based on his training, experience, and observations of interviews, that was the case; and

- Grandmother L, who, in response to a question about whether she was concerned that the victim would not be honest with her, said, "No. She, she normally would not lie about something like that."

¶ 11 Significantly, Short did not object to any of this testimony. Consequently, reversal is not warranted in the absence of plain error. *See* Crim. P. 52(b); *People v. Sommers*, 200 P.3d 1089, 1095 (Colo. App. 2008).

¶ 12 It is improper for a witness to testify to whether another "witness was telling the truth on a specific occasion because it is solely the jury's responsibility to determine whether a particular

5

witness's testimony or statement is truthful." *People v. Bridges*, 2014 COA 65, ¶ 11. "This rule applies to both direct and indirect implications of a [witness's] truthfulness." *Venalonzo v. People*, 2017 CO 9, ¶ 32.

### A. The Therapist

¶ 13 Our case law recognizes that "'[a]n expert may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child,' . . . because it assists the jury in understanding the victim's behavior after the incident — why the victim acted the way he or she did." *People v. Relaford*, 2016 COA 99, ¶ 28 (quoting *People v. Mintz*, 165 P.3d 829, 831 (Colo. App. 2007)). This type of expert testimony "aid[s] the jury in understanding the typicality of reactions by [children] who have been subjected to sexual abuse that might, under other circumstances, be considered bizarre." *People v. Morrison*, 985 P.2d 1, 6 (Colo. App. 1999), *aff'd*, 19 P.3d 668 (Colo. 2000); *accord People v. Fasy*, 829 P.2d 1314, 1317 (Colo. 1992) (The doctor's "testimony clearly assisted the jury in understanding the victim's behavior after the incident.").

¶ 14 This type of evidence is considered proper because it "(1) relates to an issue apart from credibility and (2) only incidentally

tends to corroborate a witness's testimony." *Relaford*, ¶ 31 (quoting *People v. Cernazanu*, 2015 COA 122, ¶ 20).  This evidence does not say whether the child was or was not lying on a specific occasion; instead, it explains why a jury should not necessarily disbelieve a child because of circumstances that, in a different context, would discredit the child's story.  *See People v. Whitman*, 205 P.3d 371, 383 (Colo. App. 2007).  Such information provides "a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation."  *Id.* (quoting *People v. Aldrich*, 849 P.2d 821, 829 (Colo. App. 1992)); *see also State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984) ("Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children.")) (quoted with approval by the supreme court in *Fasy*, 829 P.2d at 1317).

¶ 15    The present case is, in many respects, like *People v. Mintz.* There, as here,

> the expert . . . answered a number of hypothetical questions reflecting the facts of the present case. The expert testified about traits and behavior generally exhibited by children. He did not testify [the] victim exhibited these traits, and he did not offer an opinion about whether [the] victim told the truth about having been abused.
>
> The purposes for which the expert's testimony was admitted in the case have previously been deemed proper. . . .
>
> . . . .
>
> This evidence was admissible "because the expert testified in general terms [and] did not focus on the truthfulness of the child's statements."

*Mintz*, 165 P.3d at 831-32 (quoting *Morrison*, 985 P.2d at 5); *see also Morrison*, 985 P.2d at 5 ("The hypothetical question posed to this witness contained facts substantially identical to those disclosed by the evidence here, *i.e.*, one of the victims had made rather bizarre accusations against defendant and had later withdrawn them. The expert's opinion that such actions are typical of the method of empowerment used by young male victims was admissible under CRE 702 to explain that such accusations and later denials by such a victim are not necessarily unusual.").

8

¶ 16    We reject Short's assertion that *Mintz* and *Morrison* were wrongly decided.  Persuaded by those authorities, we perceive nothing improper about the therapist's testimony here.

¶ 17    In reaching this conclusion, we are cognizant of the supreme court's recent decision in *Venalonzo*.  In that case, a forensic interviewer "testified about the two girls' interviews and compared their behavior to that of other child sex assault victims.  Specifically, she stated that many of the children's behaviors were common to [those of] other child sex assault victims she had interviewed . . . ."  *Venalonzo*, ¶ 35.  The supreme court held that "the only purpose for the interviewer's testimony comparing [the two children's] behavior to that of other child sex assault victims was to bolster the children's credibility.  Admitting this evidence did not make any other fact at issue more or less probable."  *Id.* at ¶ 36 (citation omitted).  Consequently, the court held that the interviewer's testimony "improperly bolstered the credibility of the child victims by creating an impermissible inference that they were telling the truth in this case."  *Id.* at ¶ 2.

¶ 18    *Venalonzo* is distinguishable from the present case.  Unlike the present case, the expert in *Venalonzo* was intimately involved with

9

the child victims in the case. She was the individual who took their statements, testified to their behaviors, and compared their behaviors to those she saw in other child sexual abuse cases. The interviewer was, therefore, testifying as both a fact witness and an expert. The jury could not help but interpret what the expert had to say, in light of her dual role, as intimating her opinion that the children had been truthful during the interview.

¶ 19     In the present case, the therapist did not play a dual role. She was not involved in taking — and did not otherwise witness — the victim's statements. Her expert opinions could not be interpreted as conveying an opinion of her belief in the truthfulness of the victim on another occasion.

¶ 20     Notably, the court in *Venalonzo* did not repudiate or retreat from its earlier decision in *Fasy* — a decision consistent with the principles and authorities upon which we rely here. Consistent with *Fasy*, the therapist's testimony here permissibly conveyed to the jury information that would assist it in evaluating what might appear to be puzzling aspects of the victim's behavior subsequent to the commission of the alleged offense. Although that evidence "may incidentally give rise to an inference that a victim is or is not telling

the truth about the specific incident," "this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness." *People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986).

## B.     *The Detective*

¶ 21     We also perceive nothing improper about the detective's testimony.  The detective was not testifying to the truthfulness of the therapist, and thus, inferentially, of the victim too.  The detective was simply relating to the jury his observations about child victim disclosures; he rendered no opinion about whether a child's difficulty in disclosing something made it more or less likely that he or she was telling the truth.

## C.     *Grandmother L's Testimony*

¶ 22     Based on our reading of other parts of *Venalonzo* and of *Cernazanu,* we conclude that Grandmother L's testimony that the victim "normally would not lie about something like that" was improper.

¶ 23     In *Venalonzo,* the supreme court held that a mother's testimony that her child

11

> did not display any signs that she was lying when she reported the incident, that [the child] was not sophisticated enough to make up a story about the sexual assault, and that [the child] had no reason to accuse [the defendant] unless the incident had actually occurred . . . amounted to testimony that [the child] was telling the truth about the sexual assault.

*Venalonzo*, ¶ 39. Further, the court pointed to the prosecutor's statement ("you said that she wouldn't accuse somebody of *this*") and question (whether the child's "mind wasn't sophisticated enough to come up with *this*") as eliciting the mother's comments on the child's veracity in the case. *Id.* at ¶ 42.

¶ 24     In *Cernazanu,* a division of this court held that a mother's testimony that her child did not display typical "lying" behavior when reporting a sexual assault necessarily implied to the jury that the victim was not lying, and thus, that she was telling the truth on that occasion. 2015 COA 122, ¶¶ 16-22.

¶ 25     Similar to those cases, Grandmother L's comment that the victim would normally not lie about something like "that" served no other purpose than to convey to the jury Grandmother L's belief that the victim was not lying — and, consequently, that she was telling the truth — on this occasion.

¶ 26　　In so concluding, we necessarily reject the prosecution's argument that Grandmother L's testimony was evidence of the victim's general character for truthfulness, which under CRE 608(a) was admissible because Short's defense attacked the victim's character for truthfulness. The evidence challenged on appeal was not evidence of the victim's *general* character for truthfulness but rather "evidence of [the victim's] specific veracity habit and its application to a specific occasion." *Cernazanu*, ¶ 23.

¶ 27　　As noted earlier, because Short did not object to Grandmother L's testimony, reversal is not warranted in the absence of plain error.

¶ 28　　Plain error is error that is both "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 14. To qualify as plain error, the error must be so clear cut that a trial judge should have been able to avoid it without benefit of objection, *People v. Pollard*, 2013 COA 31M, ¶ 39, and it must be "seriously prejudicial" — that is, it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the defendant's conviction. *People v. Ujaama*, 2012 COA 36, ¶ 43; *see also Hagos*, ¶ 14.

¶ 29 "The rule that a witness may not express an opinion as to the credibility of another witness is both clear and long established." *People v. Cook*, 197 P.3d 269, 275-76 (Colo. App. 2008); *see, e.g.*, *People in Interest of G.E.S.*, 2016 COA 183, ¶ 31 n.2 ("[T]his court and the supreme court have long held that a witness may not vouch for the credibility of another witness on a particular occasion[.]")." Although, in some circumstances, it is not always clear how the rule applies, *Relaford*, ¶¶ 44-48 (sorting out permissible from impermissible expert opinion on child behaviors), it is, in our view, clear in this case. Thus, the "obvious" prong of the plain error standard is met.

¶ 30 The issue, then, is whether the error in allowing Grandmother L's testimony was so "seriously prejudicial" as to warrant a new trial. We conclude that it was not.

¶ 31 We note, in this respect, that (1) Grandmother L's testimony was very brief; (2) Grandmother L was not an expert, and thus, her testimony did not have the imprimatur of expertise; (3) the prosecution presented evidence (i.e., the victim's vaginal redness and swelling, behavioral changes, repeated urinary tract infections, and incontinence; Short's acknowledgment that somebody had

abused the victim; and the victim's vehement reaction upon seeing Short for the first time in over a year) corroborating the victim's allegations of sexual misconduct; and (4) the prosecution made no reference to this part of Grandmother L's testimony in closing argument.

¶ 32    In light of these circumstances, the error here does not cast serious doubt on the reliability of Short's conviction; consequently, there is no plain error warranting reversal. *See People v. Gallegos*, 644 P.2d 920, 927 (Colo. 1982) (improperly admitting investigating officer's testimony "attesting to the accuracy or credibility of witness statements" did not constitute plain error where "the jury had an opportunity to evaluate the extensive testimony of the victim" at trial); *see also People v. Eppens*, 979 P.2d 14, 18 (Colo. 1999) (finding a social worker's testimony that she "felt that [the victim] was sincere" did not rise to the level of plain error because the social worker testified as a lay witness, the jury had "a full opportunity to judge [the victim's] credibility in light of her demeanor," and the victim's testimony was corroborated by other evidence); *cf. Bridges*, ¶ 21 (finding error was reversible because the

15

witness expressing the opinion was qualified as an expert witness and there was no other corroboration of the victim's allegations).

### III. *Short's Exculpatory Statement*

¶ 33    Short contends that the trial court erroneously compelled him to forgo admitting an exculpatory part of a statement he gave to the police by telling him that, if that part of the statement was admitted, the prosecution would be permitted to expose the jury to the fact that he had previously been convicted of a felony. Although we agree, we nonetheless conclude that reversal is not warranted.

### A. *Facts*

¶ 34    At trial, the prosecution presented evidence from Short's recorded interview with police. Through the testimony of a detective, the prosecution introduced a statement made by Short in which he agreed "someone's abusing [the victim]." The prosecution did not, however, propose to admit what Short had said immediately thereafter: "[B]ut it ain't me."[1]

---

[1] In the trial court, defense counsel argued that Short had said, "I did not. I swear to God." Short did say this, but about sixteen seconds after he said, "[B]ut it ain't me," *and* in response to the detective's accusation (that no one tried to admit) that the victim said it was Short who "touched" her.

¶ 35    Short asserted that admitting the first part of the statement without the second was "a complete misrepresentation" of what he said during the interview, and that he was entitled to have the second part admitted under the rule of completeness, CRE 106.

¶ 36    The trial court determined that the second part of the statement could, as Short argued, come in under the rule of completeness.  However, the trial court also determined that because the second part of the statement was self-serving hearsay, if it was introduced by the defense, the prosecution would be entitled to impeach it with evidence of Short's previous felony conviction.  *See* CRE 806 ("When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness."); *see also* § 13-90-101, C.R.S. 2017 ("In every case the credibility of the witness may be drawn in question, as now provided by law, but the conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness.").  Because of this ruling, Short did not attempt to admit the second part of the statement.

*B.* *The Trial Court Erred in Ruling that an Exculpatory Part of Short's Statement Was Admissible Subject to Impeachment Under CRE 806*

¶ 37      We review a trial court's evidentiary ruling for an abuse of discretion. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). "A trial court abuses its discretion when its ruling is (1) manifestly arbitrary, unreasonable, or unfair or (2) based on an erroneous understanding or application of the law." *People v. Casias*, 2012 COA 117, ¶ 17.

¶ 38      Here, we conclude that the trial court misunderstood or misapplied the rule of completeness. The trial court correctly recognized that the second part of Short's statement qualified the first, and, consequently, the second part could be considered as one component of a larger, completed statement. But for purposes of attributing who was the proponent of the evidence (and thus who carried the evidentiary burdens associated with its admission), the court divided the completed statement into two parts and held Short responsible for the evidentiary "costs" of admitting the part favoring him. This, we believe, was error. The proper course would have been to inform the prosecution that it had a choice: admit (and forfeit any objection to any pertinent part of) the completed

statement or admit no part of the statement at all. If the prosecution had chosen to admit the completed statement, it could not transfer onto Short the costs of admitting that part that was favorable to him. The admission of the completed statement could not, then, be made subject to a right in the prosecution to impeach the part containing Short's exculpatory statement.

¶ 39    At common law, the rule of completeness permitted the introduction into evidence of a part of a statement to explain or put into context another part of the statement that was (or was about to be put) in evidence; the rule did not, however, extend to portions of the statement that were irrelevant to the part of the statement that was (or was about to be put) in evidence. *See People v. DelGuidice*, 199 Colo. 41, 47, 606 P.2d 840, 844-85 (1979) (relying on *Camps v. N.Y.C. Transit Auth.*, 261 F.2d 320, 322 (2d Cir. 1958)); *see also United States v. Lanzon*, 639 F.3d 1293, 1302 (11th Cir. 2011) ("[I]t is consistently held that the rule [of completeness] permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced." (quoting *United States v. Simms*, 385 F.3d 1347, 1359 (11th Cir. 2004))); *Diggs v. United States*, 28 A.3d 585,

597 (D.C. 2011) ("The rule of completeness does not provide that when part of an out-of-court statement is introduced against its maker, the declarant has an automatic right to insist that other parts be admitted too, simply because they are favorable to his position. Rather, the rule contemplates that other parts of the statement should be admitted, in the trial court's discretion, 'when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact.'" (quoting *Butler v. United States*, 614 A.2d 875, 882 (D.C. 1992)))).

¶ 40    According to the supreme court, "[t]he common-law rule of completeness is codified in CRE 106." *People v. Melillo*, 25 P.3d 769, 775 n.4 (Colo. 2001). CRE 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

¶ 41    Because CRE 106 is identical to Fed. R. Evid. 106, we consider federal cases and authorities concerning the federal rule highly persuasive in interpreting and applying our own. *See, e.g., Faris v. Rothenberg*, 648 P.2d 1089, 1091 n.1 (Colo. 1982) ("Fed. R. Civ. P.

63 is identical to C.R.C.P. 63. Thus, federal cases and authorities interpreting the federal rule are highly persuasive."); *United Bank of Denver Nat'l Ass'n v. Shavlik*, 189 Colo. 280, 282, 541 P.2d 317, 318 (1975) (deeming the authority and commentators on Fed. R. Civ. P. 14 to be persuasive because C.R.C.P. 14 is virtually identical).

¶ 42 One commentator has aptly summarized Fed. R. Evid. 106 thusly:

> Basically, the rule prevents a party from achieving an unfair result by introducing all or part of a writing or recording out of its context. When the trial court finds that fairness requires the admission of additional evidence, the proponent must decide between allowing all of the evidence to be admitted and withdrawing the originally proffered portions.
>
> . . . .
>
> The party who wants to complete the record is entitled under the Rule to compel the offer of the additional information at the time the proponent offers the partial evidence, rather than waiting until a later stage of the trial. . . . As such, the rule reduces the risk that a writing or recording will be taken out of context and that this initial misleading impression will take hold in the mind of the jury. The opponent has discretion, of course, to wait to offer the completing evidence until a later point. But the rule recognizes that

> sometimes waiting until later to put an unfair presentation of harmful evidence in context is just not good enough.

2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* § 106.02 (11th ed. 2015) (footnotes omitted); *see also* 1 Kenneth S. Broun, *McCormick on Evidence* § 56 (7th ed. 2013) (recognizing that Fed. R. Evid. 106 permits "the adversary . . . to require the proponent to introduce both the part which the proponent desires to introduce and other passages which are an essential part of its context"); 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 1:42 (4th ed. 2015) ("[S]ometimes the party who offers a written or recorded statement (or part of one) may himself be required in appropriate cases to present additional parts, rather than leaving the task of providing necessary context to other parties. In both cases, the aim is to prevent distortion and consequent misleading.").

¶ 43    What happens, though, when otherwise inadmissible evidence is proffered as the means of satisfying the rule of completeness embodied in Fed. R. Evid. 106?  Some courts, including divisions of this court, have held that the rule of completeness does not authorize the admission of otherwise inadmissible evidence.  *See*

*People v. Davis*, 218 P.3d 718, 731 (Colo. App. 2008) ("Under the rule of completeness, when one party introduces part of a written or recorded statement, the opposing party can introduce other parts of that statement. . . . However, self-serving hearsay declarations made by a defendant may be excluded because there is nothing to guarantee their trustworthiness."); *accord People v. Zubiate*, 2013 COA 69, ¶ 33 (stating, in dicta, "[s]elf-serving hearsay declarations made by a defendant may be excluded under the rule of completeness because there is nothing to guarantee their trustworthiness"), *aff'd*, 2017 CO 17; *see also United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) ("[E]xculpatory hearsay may not come in solely on the basis of [the rule of] completeness." (quoting *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013))); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("Even if the rule of completeness did apply, exclusion of [the defendant's] exculpatory statements was proper because these statements would still have constituted inadmissible hearsay."), *holding modified on other grounds by United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996)

23

(Rule 106 does not "render admissible the evidence which is otherwise inadmissible under the hearsay rules.").

¶ 44 But that position is not the uniform view. *See, e.g., United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) (A hearsay objection "does not block [information's] use when it is needed to provide context for a statement already admitted."); *United States v. Bucci*, 525 F.3d 116, 133 (1st Cir. 2008) ("[O]ur case law unambiguously establishes that the rule of completeness may be invoked to facilitate the introduction of otherwise inadmissible evidence."); *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence when the court finds in fairness that the proffered evidence should be considered contemporaneously. A contrary construction raises the specter of distorted and misleading trials, and creates difficulties for both litigants and the trial court."); *United States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986) (Under Rule 106, otherwise inadmissible evidence is admissible where it "is necessary to correct a misleading impression."); *State v. Sanchez*, 380 P.3d 375, 383, 383 n.4 (Utah Ct. App. 2016) (noting the split

24

among federal and state courts over whether Rule 106 admits otherwise inadmissible hearsay, and deciding that it does allow the admission of such evidence), *cert. granted*, 390 P.3d 727 (Utah 2017).

¶ 45    Nor, according to a number of commentators, is the failure to admit otherwise inadmissible evidence pursuant to the rule of completeness the better view.  For example, one commentator said:

> A party should not be able to admit an incomplete statement that gives an unfair impression, and then object on hearsay grounds to completing statements that would rectify the unfairness.
>
> The appropriate way to resolve the hearsay issue is to hold that the party who offers an incomplete statement or document forfeits any hearsay objection to completing evidence that is necessary to correct a misleading impression. . . .  [B]y introducing evidence in an unfair and selective way, the proponent can be deemed to waive its right to object to hearsay that would be necessary to place that evidence in proper context.  It is up to the proponent of the initial portion to decide whether to forgo that portion, or to forgo the hearsay objection to the remainder.  Another way to look at it is that when the proponent offers evidence out of its necessary context, any out-of-court statement that is clearly necessary to place the evidence in proper context is not hearsay at all; rather it is

> admissible for the not-for-truth purpose of providing context.

2 Saltzburg et al., § 106.02 (footnotes omitted); *see also* 1 Mueller & Kirkpatrick, § 1:43 ("[H]earsay objections should not block use of a related statement . . . when it is needed to provide context for statements already admitted.  Thus a statement should be admissible if needed to provide context under Rule 106 and to prevent misleading use of related statements even if the statement would otherwise be excludable as hearsay . . . . "); *id.* § 1:45 ("On request by the accused, the court should require a prosecutor who wants to offer parts of a confession to introduce at the same time not only the incriminating parts but also self-serving or exculpatory parts that should in fairness be heard and considered at the same time.  If for any reason the prosecutor introduces less than all of it, in the process deleting self-serving or exculpatory remarks that the accused wishes to have heard by the trier of fact, the rule of completeness requires the court to receive the latter."); Dale A. Nance, *Verbal Completeness and Exclusionary Rules Under the Federal Rules of Evidence*, 75 Tex. L. Rev. 51, 54 (1996) ("If a proponent has evidence of the opponent's admission, the proponent

may well be tempted to introduce the part of that admission that is most damaging to the opponent, secure in the knowledge that the opponent cannot respond.  The completeness doctrine vitiates this maneuver by assuring the introduction of all parts of the admission that are demanded by the opponent and that affect the inferences that may legitimately be drawn from the part of the utterance the proponent has chosen to introduce.  Thus, the completeness doctrine serves a *trumping* function in that it trumps exclusionary rules that would otherwise prevent the opponent's response.").

¶ 46　　Persuaded by this latter group of authorities, we conclude that the trial court properly determined that Short's otherwise inadmissible self-serving hearsay was admissible under the rule of completeness to qualify, explain, or place into context the evidence proffered by the prosecution.  *See* Nance, 75 Tex. L. Rev. at 83 ("Neither fairness in administration nor the ascertainment of truth is served by an interpretation of Rule 106 that would allow a proponent to take matters out of context by choosing to omit

27

information in the knowledge that the opponent is prevented by an exclusionary rule from presenting that which is omitted.").[2]

¶ 47    The remaining question, though, is whether the court could exact a "price" from Short under the rule of completeness for admitting the exculpatory portions of his statement.  In *United States v. Velasco*, 953 F.2d 1467, 1473 n.5 (7th Cir. 1992), the Seventh Circuit Court of Appeals appeared to answer "yes," or at least "yes" in a case where the defendant was trying, without having to take the stand himself, to "get[] the benefit of the statement that [he] ha[d] recanted."  Characterizing the defendant's position there as "want[ing] to have his cake, eat it too, and not have to clean up the dishes afterwards," the court said that Rule 806 was "not inapplicable."  *Id.*

¶ 48    One commentator has, however, espoused a contrary view:

> If one views Rule 106 as creating a distinct
> hearsay exception which the opponent is now
> using to present his self-serving hearsay, then
> Rule 806 allows the proponent to impeach.  If,

---

[2] Necessarily, then, we decline to follow the *Davis* division's holding to the contrary.  *See People v. Smoots*, 2013 COA 152, ¶ 20 (stating that one division of the court of appeals is "not obligated to follow the precedent established by another division"), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

28

however, one views Rule 106 as controlling the proponent's use of party-opponent admissions, admissible under Rules 801(d)(2)(A) and 801(d)(2)(B), then Rule 806 implicitly precludes impeachment, because such admissions are defined as *nonhearsay* in the Federal Rules. The latter must be the right result because the exercise of the completeness motion should not subject the opponent to any impeachment that would not have been allowed if the proponent had presented the entirety of the statement in the first place, as it was his duty to do. The forced presentation theory of completeness answers the question of how to treat the resulting admission of the remainder.

Nance, 75 Tex. L. Rev. at 94-95 (footnotes omitted); *id.* at 96 (critiquing *Velasco*, saying its "dictum mistakes the nature of the completeness doctrine, as well as the import of Rule 806: The defendant should have been no more subject to impeachment than he would have been had the government presented the relevant whole of the post-arrest statement"); *cf.* 1 Mueller & Kirkpatrick, § 1:45 (requiring the prosecution to offer additional parts of a statement at the outset "keeps the government from putting what amounts to unfair pressure on the accused to take the witness stand").

¶ 49    In our opinion, this latter view is more in line with the purposes of the rule of completeness codified in Rule 106, and,

accordingly, we adopt it. If the prosecution wants to admit part of a statement, it ought, in fairness, to "pay the costs" of admitting it in its (relevant) entirety under the rule of completeness. If it is not willing to pay the costs, it should not be permitted to admit any portion of the statement.

¶ 50 So far, we have been talking about Rule 106 and its application without addressing the form of the statement at issue. But by its terms, Rule 106 applies only to "writings or recorded statements." Short's statement was not admitted in this form. It was admitted through the oral testimony of a detective. Nonetheless, following the lead of federal case law on the subject, we conclude that Rule 106 principles also apply to the form of evidence proffered by the prosecution here under CRE 611(a) — which is substantively identical to Fed. R. Evid. 611(a).[3] *See, e.g.,*

---

[3] CRE 611(a) provides as follows:

> (a) Control by Court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

*Lopez-Medina*, 596 F.3d at 734 ("While Rule 106 applies only to writings and recorded statements, we have held 'the rule of completeness embodied in Rule 106 is "substantially applicable to oral testimony," as well by virtue of Fed. R. Evid. 611(a) . . . .'" (quoting *United States v. Zamudio*, 141 F.3d 1186, 1998 WL 166600, at *5 (10th Cir. Apr. 6, 1998) (unpublished table decision))); *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009) (holding that the Rule 106 principle of completeness "has since been extended to oral statements through interpretation of Fed. R. Evid. 611(a)," and the two are now "equivalent"); *United States v. Range*, 94 F.3d 614, 621 (11th Cir. 1996) (Rule 611 "has been read to impose the same fairness standard [as under Rule 106] upon conversations."); *cf. State v. Cabrera-Pena*, 605 S.E.2d 522, 525-26 (S.C. 2004) (finding that the common law of the state extends the rule of completeness in Rule 106 to oral communications).

¶ 51 The upshot of all this is that the trial court erroneously held that the exculpatory parts of Short's statement could be admitted, subject to impeachment of Short (as the declarant) with his prior conviction, under CRE 806. In light of the court's erroneous ruling,

Short did not seek to have the exculpatory parts of his statement admitted, and, consequently, the only evidence the jury heard, with respect to his statement, was that he admitted "someone [was] abusing" the victim.

## C. The Error Was Harmless

¶ 52 Under Crim. P. 52(a), we are to disregard a harmless error. But whether we can disregard a particular error as harmless depends, in part, on (1) whether the error is classified as constitutional or nonconstitutional in dimension and (2) whether the error satisfies the appropriate harmless error test for constitutional or nonconstitutional error. *See Krutsinger v. People*, 219 P.3d 1054, 1058 (Colo. 2009) (discussing the harmless error tests for constitutional and nonconstitutional error).

¶ 53 For two reasons, we do not apply the harmless error test for constitutional error:

- (1) In *Krutsinger*, the supreme court recognized that not "every erroneous evidentiary ruling . . . amounts to federal constitutional error." *Id.* at 1062. "[T]he standard or test for assessing whether a defendant's right to . . . present a defense has been violated by evidentiary

32

rulings is clearly dependent upon the extent to which he was permitted to subject the prosecutor's case to 'meaningful adversarial testing.'" *Id.* (quoting *Crane v. Kentucky,* 476 U.S. 683, 691 (1986)). In the present case, Short was permitted to subject the prosecution's case to "meaningful adversarial testing." Consequently, the trial court's error was not of constitutional dimension; and

- (2) Short did not assert in the trial court that the court's rule of completeness ruling chilled his rights to present a defense and to a fair trial. Consequently, these constitutional issues have not been preserved for appellate review. *See People v. Gash,* 165 P.3d 779, 781 (Colo. App. 2006) (holding evidentiary objection in the trial court based on hearsay but not confrontation grounds did not preserve alleged confrontation error for review).

¶ 54    For these reasons, we apply the harmless error test for nonconstitutional error. *See, e.g., State v. Chavez,* 189 Wash. App. 1047, 2015 WL 5099540, *7 (Aug. 31, 2015) (unpublished opinion)

(stating that error in precluding defendant from asking witness about other parts of statement was not an error of constitutional magnitude).[4] Under the nonconstitutional harmless error test, the defendant bears the burden of showing prejudice from the error. *Casias*, ¶ 60. To obtain reversal, the defendant must establish a reasonable probability that the court's error contributed to his conviction. *See id.* at ¶ 62. A "reasonable probability" does not mean that it is "more likely than not" that the error caused the defendant's conviction; rather, it means only a probability sufficient to undermine confidence in the outcome of the case. *Id.* at ¶ 63.

¶ 55    In assessing the prejudicial effect of evidentiary error,

> an appellate court considers a number of
> factors, namely, "the overall strength of the
> state's case, the impact of the improperly
> admitted or excluded evidence on the trier of
> fact, whether the proffered evidence was
> cumulative, and the presence of other evidence
> corroborating or contradicting the point for
> which the evidence was offered."

---

[4] Ordinarily, unpreserved constitutional error would warrant relief only if the error qualified as plain error, i.e., error that is "obvious" and "so undermine[s] the basic fairness of the trial as to cast serious doubt on the reliability of the judgment." *People v. Gash*, 165 P.3d 779, 781-82 (Colo. App. 2006). The type of prejudice a defendant must show to demonstrate plain error is more onerous than that which he or she must demonstrate to show reversible nonconstitutional error. *See Hagos v. People*, 2012 CO 63.

*Id.* at ¶ 64 (quoting *State v. Martin V.*, 926 A.2d 49, 54 (Conn. App. Ct. 2007)). "'[T]he single most important factor' in a nonconstitutional harmless error inquiry is whether the case was 'close.'" *Id.* at ¶ 69 (quoting *United States v. Ince*, 21 F.3d 576, 584 (4th Cir. 1994)).

¶ 56     Initially, we note that we are usually confronted with evidentiary error involving either the improper admission of something into evidence or the improper exclusion of something from the evidence. In the present case we are confronted with both. Short's statement that "someone's abusing" the victim was inadmissible absent compliance with the rule of completeness. Conversely, Short was improperly inhibited from introducing contextual evidence of a denial of wrongdoing on his part.

¶ 57     Short's statement that "someone's abusing her" was essentially cumulative of other evidence indicating that the victim had been abused. Besides the victim's testimony that Short had "touch[ed]" her "privates," the victim had vaginal redness and swelling, suffered urinary tract infections, and exhibited behavioral

changes, including regression in her toilet training,[5] "dancing provocatively," making excuses to stay longer at Grandmother L's house, and crying when she had to return to Grandmother K's home where Short sometimes stayed. Defense counsel's expert testified that the victim's urinary tract infections could be attributed to sexual assault, and the victim's significant behavioral changes tended to corroborate the fact of a sexual assault. *See Stevens v. People*, 796 P.2d 946, 956 (Colo. 1990) (recognizing that behavioral changes such as a child's loss of toilet training, sexual knowledge that is new or atypical for the child, and inappropriate sexual behavior are corroborative of sexual assault allegations).

¶ 58    The bigger problem, as we see it, was the exclusion of Short's denial of wrongdoing. Although this evidence would not have been admissible otherwise,[6] its absence here allowed the prosecution to

---

[5] Grandmother L testified that "[the victim] would wet her pants a lot" and that she began "pooping" in her pants.

[6] *See, e.g., People v. Abeyta*, 728 P.2d 327, 331 (Colo. App. 1986) ("Hearsay declarations made by a defendant in his own favor are generally not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial truthworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse; an accused could create evidence

present a misleading picture (i.e., of someone who had admitted knowing the victim had been abused but, apparently, had not denied doing it himself).

¶ 59    In other circumstances, such a situation could warrant reversal for a new trial. But not, we think, here. In the end, the case against Short was strong, even aside from the misleading statement that was entered into evidence. Short was shown to have had access to the victim, and on occasion was alone with the victim, around the time the victim's relatives first began to suspect she was being abused. The victim reacted violently upon seeing Short unexpectedly for the first time in over a year, and she identified Short as her abuser both in out-of-court statements and in her in-court testimony. Because this was not a close case, the court's evidentiary error was not such as would undermine our confidence in the verdict. Consequently, the error was harmless.

---

for himself by making exculpatory statements for subsequent use at his trial.").

## IV. One Conviction and Sentence, Not Two

¶ 60    Short contends, the People concede, and we agree, that only one judgment of conviction and sentence should have been imposed in this case.

¶ 61    The trial court entered separate convictions and sentences for both (1) sexual assault on a child and (2) sexual assault on a child-pattern of abuse. The court sentenced Short to six years to life imprisonment on the first count, and to nine years to life imprisonment on the second count.

¶ 62    The number of convictions and sentences that could be entered turns on whether the pattern of abuse count operated only as a sentence enhancer or encompassed an additional substantive offense as well. *People v. Wiseman*, 2017 COA 49M, ¶ 10. If the former was the case, then only one conviction with an enhanced sentence could be entered; if the latter was the case, then two convictions and sentences could be entered. *Id.* at ¶ 11.

¶ 63    Here, the jury entered only one guilty verdict, finding Short guilty of sexual assault–pattern of abuse. As the People concede, the single verdict form does not support convictions for two separate offenses for sexual assault and sexual assault-pattern of

38

abuse. Consequently, the pattern of abuse finding could act only as a sentence enhancer. The separate conviction and sentence for simple sexual assault must be vacated.

## V.    Conclusion

¶ 64     The judgment of conviction is affirmed in part and vacated in part, and the case is remanded with directions to correct the mittimus consistent with the views expressed in this opinion.

JUDGE HAWTHORNE concurs.

JUDGE WELLING specially concurs.

JUDGE WELLING, specially concurring.

¶ 65    I agree with the majority's analysis and conclusions in Parts II.B and II.C, as well as Parts III and IV.  I also agree with the majority's ultimate disposition of the case.  Where I respectfully part ways with the majority, however, is its conclusion that admission of certain portions of Chery Young's testimony was not error.  Because I conclude that portions of Ms. Young's testimony crossed the line of permissible testimony, I write separately.

## I.    *Background*

¶ 66    Ms. Young was called by the prosecution and, without objection, testified as an expert in

- all aspects of child sexual assault and abuse and interactions and reactions of child victims during the sexual assault;

- the patterns of disclosure and outcry statements of child sexual assault and abuse victims;

- the forensic protocol of child sexual abuse interviews;

- the victim-offender relationship dynamics; and

- the "process of memory."

¶ 67    Ms. Young never treated, interviewed, or met A.P., the named victim in the case.  Instead, she testified as a so-called blind expert. In this capacity she testified regarding the dynamics of sexual assault disclosures by children generally, including how the nature, timing, and details of such disclosures vary depending on a variety of circumstances, such as the age of the child, the relationship with the alleged perpetrator, and the stability of the child's environment. During her direct examination, Ms. Young answered questions regarding the relationship between a child's inconsistent disclosures and his or her truthfulness and credibility.  She also responded to a pair of hypotheticals that closely tracked the facts of this case.  Short never objected during Ms. Young's testimony.

## II.    *Analysis*

¶ 68    On appeal, Roger Lee Short contends that the trial court committed plain error by permitting Ms. Young to bolster the victim's credibility and to explain away inconsistencies in her disclosures.

¶ 69    Divisions of this court have repeatedly permitted the use of blind experts in the context of prosecutions for sexual assaults on children.  *See, e.g., People v. Relaford*, 2016 COA 99, ¶¶ 16, 33;

*People v. Whitman*, 205 P.3d 371, 382-83 (Colo. App. 2007); *People v. Mintz*, 165 P.3d 829, 831-32 (Colo. App. 2007); *People v. Morrison*, 985 P.2d 1, 5-6 (Colo. App. 1999), *aff'd*, 19 P.3d 668 (Colo. 2000). The rationale is that "[a]n expert may testify as to the typical demeanor and behavioral traits displayed by a sexually abused child." *Mintz*, 165 P.3d at 831; *see also Whitman*, 205 P.3d at 383 ("Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of [young] children." (quoting *People v. Aldrich*, 849 P.2d 821, 829 (Colo. App. 1992))). But even these experts "may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations." *People v. Wittrein*, 221 P.3d 1076, 1081 (Colo. 2009). Nor may any witness testify that another witness told the truth on a particular occasion. CRE 608(a)(1); *see also Wittrein*, 221 P.3d at 1081 ("In Colorado, neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion."); *People v. Eppens*, 979 P.2d 14, 17-18 (Colo. 1999)

(collecting cases in support of the proposition that "[i]t is well established that CRE 608(a)(1) does not permit a witness to offer an opinion that a child was telling the truth on the specific occasion that the child reported a particular sexual assault by a defendant"). With these concepts in mind, I turn to two lines of inquiry of Ms. Young that I find problematic.

### A. Opinions on A.P.'s Credibility

¶ 70 Ms. Young was the sixth witness to testify at trial. By the time she testified, the jury was aware that A.P. had given inconsistent disclosures about what happened to her.

¶ 71 "[W]itnesses are prohibited from testifying that another witness is telling the truth on a particular occasion." *Venalonzo v. People*, 2017 CO 9, ¶ 32 (citing *Wittrein*, 221 P.3d at 1081). "This rule applies to both direct and indirect implications of a child's truthfulness." *Id.* (citing *Wittrein*, 221 P.3d at 1082). The line between permissible and impermissible testimony, however, is not always clear. *See Relaford*, ¶ 40 ("[U]nder the existing case law, it is not always clear (or even consistent among cases) where to draw the line between expert testimony on the typical characteristics of sexual assault victims that is permissible and that which is

impermissible because it is tantamount to an opinion that the victim was telling the truth.").

¶ 72    In my view, three of the questions posed to Ms. Young crossed this line, as opaque as it may be.  Those questions were:

> Q.  Are there portions in a child's memory where you, frankly, expect there to be some inconsistencies?
>
> . . . .
>
> Q.  Ms. Young, is then inconsistency always going to be a sign of some fabrication, of some degree of untruthfulness on the part of the child?
>
> . . . .
>
> Q.  Conversely, would you describe that consistency between disclosures is always a sign of credibility?

¶ 73    These questions had only one discernable purpose: to elicit an opinion about the child victim's credibility.  They were calculated to elicit an opinion that notwithstanding inconsistencies, A.P.'s disclosures were credible.  That is not the proper subject for expert testimony.  *See* CRE 608(a)(1); *see also Venalonzo*, ¶ 32 (holding that CRE 608(a) "applies to both direct and indirect implications of a child's truthfulness").

¶ 74    *Venalonzo* is instructive on this point.  In *Venalonzo*, ¶ 7, the forensic interviewer testified about, among other things, "whether children typically say different things to the interviewer than they do to responding officers or Department of Human Services workers, or when testifying at trial."  The supreme court observed that "[o]nce the interviewer began comparing [the victims in the case] to other child sex assault victims — *stating that children who had been sexually assaulted commonly gave conflicting details —* her testimony had no proper purpose."  *Id.* at ¶ 36 (emphasis added).  Here, the questions were even more problematic, as the prosecution's questions invited the expert to draw a direct line between the inconsistencies in a child's disclosures and the child's credibility.  This, in my view, is not a proper line of inquiry.  Accordingly, I conclude that it was error for the trial court to permit these questions to be asked.

¶ 75    Short did not object to these questions, so we review for plain error.  *See Relaford*, ¶ 36.  Even assuming the error was obvious, in order to warrant reversal under a plain error standard, the error must have "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of

conviction." *Hagos v. People*, 2012 CO 63, ¶ 14 (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)). I conclude that this testimony does not meet this exacting standard.

¶ 76    Although invited to offer a definitive opinion on the victim's credibility by the prosecutor's improper questions, Ms. Young did not do so. Instead, each time she was asked about the relationship between inconsistency, on the one hand, and credibility or untruthfulness, on the other hand, she opined that inconsistency is simply a factor that the jury should consider in assessing credibility, not that it should be disregarded or that it doesn't matter. For example, in response to the first question, Ms. Young responded:

> Yes. I mean, and keep this in mind that inconsistent statements don't, necessarily, don't equal actually, fabrication. *That inconsistent statements can occur for a variety of reasons.* And the, the researchers that have done quite a bit on suggestibility and inconsistency, out of Cornell University, have been very clear about that. *That, of course, we want to notice inconsistent statements. And we want to understand the reason for them.* But, it would be a disservice to decide if a child makes an inconsistent statement, that the child is, therefore, not truthful.

(Emphasis added.)

¶ 77      She offered a similar explanation when asked whether

"inconsistency [is] always going to be a sign of some fabrication":

> Well -- no.  It's important to watch for
> [inconsistency].  It's important to understand
> the dynamics behind it.  But, then, it's a
> disservice to say if a child is inconsistent.  *I
> think it's important to explore why.*  And that
> somebody is able to talk about how come when
> you talked with this person and then when you
> talk with me, it seems like you're talking about
> things that maybe only the [t]herapist, that
> only I know about so far.  Exploring that and
> asking the child to explain how come they
> haven't been able to talk about that with other
> people is important to know why.  *That, you
> know, I don't want to say they're unimportant
> at all.  They're just important to investigate.*

(Emphasis added.)

¶ 78      She continued in a similar vein when asked whether

consistency is "always a sign of credibility":

> No.  There are a few cases where it's, usually,
> high-conflict alienation.  The child making an
> allegation against a parent being coached by
> another parent.  Those children can make
> these allegations that are very []rote, very
> rehearsed.  There's a whole lot of other factors.
> But, they can be very consistent, said exactly
> the same way, answered the questions the
> same way.  That, also, can create a little bit of
> a flag just as inconsistent statements can
> create a yellow flag.  That things are []rote and
> rehearsed make us be a little bit concerned
> about possible coaching at times.  So, we want

47

to understand can the child discuss something like they're pulling it from actual memory. So, it, what we call it is free-narrative. The ability to talk about something while you're thinking about it as if you're kind of describing it as it's happening. That free-narrative is what most Forensic Interviewers are trying to get a child to do. Because that means they're retrieving their memory.

And, and, and it, and you have to be careful with these very narrow, rigid, []rote, rehearsed allegation[s]. Particularly, if it's happening in high conflict of a divorce.

¶ 79 Ms. Young's responses were similar to those given in *Wittrein*, where our supreme court concluded that the error did not necessitate reversal under a plain error standard. There, the expert testified on cross-examination that she did not know with "one hundred percent certainty" that the victim was telling the truth. *Wittrein*, 221 P.3d at 1082. The supreme court concluded, based upon this, "the jury could not interpret her testimony as an opinion that [the victim] was telling the truth, and her response did not affect the fairness of the trial," and, therefore, there was no plain error. *Id.*

¶ 80 Here, Ms. Young never told the jurors that they should disregard inconsistency in assessing credibility. Instead, she told

them that inconsistency is one factor among many that they should consider. In this regard, her testimony wasn't all that different from the stock jury instruction on credibility. *See* COLJI-Crim. E:05 (2017) ("Consider how the testimony of the witness is supported or contradicted by other evidence in the case. You should consider all facts and circumstances shown by the evidence when you evaluate each witness's testimony.").

¶ 81    In short, although I conclude that the trial court erred in permitting the three questions discussed above to be posed to Ms. Young, based upon the answers she gave, I also conclude that the admission of her testimony did not so undermine the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction. Accordingly, I agree with the majority that reversal is not warranted.

### B.    *Misuse of Hypotheticals*

¶ 82    Following A.P.'s initial outcry, she began to see a therapist. A.P.'s grandmother was present for a portion of some of those therapy sessions. A.P.'s grandmother testified that during one of the therapy sessions she was present for, A.P. told her and the therapist that Short had anally penetrated her with his finger and

that he made her dance naked for him.  But at trial, A.P. testified that Short had only touched her outside of her clothing and never mentioned the allegation of naked dancing.  By the time Ms. Young took the stand, the jury had heard both the grandmother's testimony about what A.P. had told her at the therapist's office and A.P.'s testimony denying that Short had touched her inside of her clothing and omitting any reference to naked dancing.

¶ 83     The prosecutor posed two carefully tailored hypotheticals to Ms. Young:

> [Prosecutor:] Let's use an example.  Say a child in a clinical environment, meeting with a [t]herapist that they now have a relationship with, is able to disclose anal penetration; but not able to do so in a courtroom.  Would that be surprising to you?
>
> [Ms. Young:] No.  Actually, that's, those are the cases, the couple of cases that I've had where kids couldn't testify to that.  I think that is a very, very difficult one for children to disclose and to testify to.  The other ones that are difficult for children to disclose and testify to are the things that they did.  So, if they were involved in a sexually abusive situation where they performed some sort of sexual act, those are much more difficult for them to talk about than the sexual acts that were perpetrated onto them.  And [indiscernible] rectal or anal penetration is a very difficult one for kids to disclose and, and to testify to.

[Prosecutor:] What about a disclosure about naked dancing? Would that be the kind of disclosure where the child's involved in the sexual act, but may have a difficult time voicing that in the courtroom, although, not in the clinical environment?

[Ms. Young:] That would be one of those, because the behavior is theirs as compared to the [o]ffender behaving towards them. That would be a behavior like if you're talking about a sexual dance or dancing without clothes on or something like that. Then, that goes back to that greater shame and difficulty in things that they have, actually, done. It's harder to discuss.

¶ 84    Short contends that the testimony elicited in response to these carefully tailored hypotheticals constituted improper opinion testimony that A.P. was telling the truth on a particular occasion. Like the questions discussed in the previous section, Short did not object to these questions either, so again we review for plain error. The majority, persuaded by a pair of cases from our court, concludes that there was nothing improper about these hypotheticals. While I am not necessarily persuaded that those cases were correctly decided, I would still conclude — based on the same cases relied on by the majority — that if admission of this testimony was error, it was not obvious.

¶ 85    The two carefully tailored hypotheticals afforded Ms. Young the opportunity to explain away a critical inconsistency between A.P.'s outcry and her trial testimony.  It is one thing for a blind expert to explain generally how different settings can affect some children's comfort level and, in turn, their ability or willingness to provide details of abuse.  But it is quite another to tailor hypotheticals to the facts of the particular case, and then ask the expert whether under those particular circumstances it would "surprise" her that a child would be unable to testify to those particular details at trial even though she was able to discuss them previously.

¶ 86    It would have been clearly improper for the prosecutor to ask A.P.'s therapist whether she would have been "surprised" if A.P. was not able to testify at trial to the abuse that she had disclosed to her in therapy.  *See Venalonzo*, ¶¶ 35-37.  Such testimony, in my view, would have been tantamount to vouching for the reliability of the child's out-of-court report over the child's trial testimony.  Thus, I cannot see how it would be permissible.  *Cf. Eppens*, 979 P.2d at 18 (holding that it was error to permit the social worker who interviewed the child to testify that she felt that the child's report

52

was "sincere"); *Tevlin v. People*, 715 P.2d 338, 341 (Colo. 1986) (holding that social worker's testimony that he believed the child victim was telling the truth was improper because it failed to refer to the witness' general character for truthfulness and instead went to the witness' truthfulness on a specific occasion). In my view, laundering such an inquiry through a blind expert should not render it permissible.

¶ 87    Relying on *Mintz* and *Morrison,* the majority concludes that there was nothing improper about these hypotheticals. *Supra* ¶¶ 15-16. As the majority correctly notes, both of these opinions seem to authorize — or at least vest the trial court with broad discretion to permit — the use of closely tailored hypotheticals. *See Morrison,* 985 P.2d at 5 (approving a hypothetical question that "contained facts substantially identical to those disclosed by the evidence" on the basis that "[t]he expert's opinion that such actions are typical of the method of empowerment used by young male victims was admissible under CRE 702 to explain that such accusations and later denials by such a victim are not necessarily unusual"); *Mintz,* 165 P.3d at 831 ("When testifying as to the typical behavioral traits of an abused child, the expert may respond to

53

hypothetical questions involving the facts of the case at hand.").
For the reasons discussed in the paragraph above, I am not
completely persuaded that the lines drawn in *Mintz* and *Morrison*
are the right ones.

¶ 88    But mere disagreement with *Mintz* and *Morrison* does not
necessarily support a conclusion that the trial court committed
plain error. "To qualify as 'plain' error, an error must be so clear-
cut, so obvious, that a trial judge should be able to avoid it without
benefit of objection." *People v. Pollard*, 2013 COA 31M, ¶ 39 (citing
*People v. Beilke*, 232 P.3d 146, 152 (Colo. App. 2009)). "For an
error to be obvious, 'the action challenged on appeal must
contravene (1) a clear statutory command; (2) a well-settled legal
principle; or (3) Colorado case law.'" *People v. Stroud*, 2014 COA 58,
¶ 33 (quoting *Pollard*, ¶ 40).

¶ 89    "[W]here there is no case law or statute concerning a trial
court's alleged error, we cannot conclude that the trial court's
decision constituted plain error because the error would not have
been obvious." *Id.* Here, not only was there no settled authority
indicating that such hypotheticals were improper, the limited
authority supports a contrary conclusion. Thus, while I am not

convinced that the prosecution's use of tailored hypotheticals was proper, I cannot conclude that the error was obvious either. *See Relaford*, ¶¶ 40-42 (declining to find obvious error on the admission of expert testimony where the issue had not yet been decided by a division of this court or our supreme court). For that reason, I reach the same conclusion as the majority: reversal is not warranted.

## III. Conclusion

¶ 90 Because I agree with the majority opinion in all respects except its assessment of Ms. Young's testimony and because I conclude that improper admission of portions of Ms. Young's testimony was not plain error, I too would affirm in part, vacate in part, and remand the case with directions for the trial court to correct the mittimus consistent with the views expressed in the majority opinion.